**UNITED STATES of America, Appellee,**

v.

**Gregory Jacen SYKES, Appellant.**

**No. 92–1396.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 12, 1992.

Decided Oct. 15, 1992.

Rehearing Denied Dec. 4, 1992.

**1244**

George C. Gubbins, Jr., Hamel, Minn., argued, for appellant.

Christopher J. Bebel, Minneapolis, Minn., argued, for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

MAGILL, Circuit Judge.

Gregory Sykes appeals from judgments of conviction entered by the district court[1] after a four-day jury trial. He was convicted of conspiring to distribute 169 grams of phencyclidine ("PCP"), a schedule II controlled substance, in violation of 21 U.S.C. § 846, and of using a firearm in the commission of the drug trafficking crime, in violation of 18 U.S.C. § 924(c). On appeal, Sykes raises a total of seven issues. He argues that: (1) the district court erred in allowing the government case agent to sit at the prosecution table and to testify as an expert; (2) the court erred by disallowing the disclosure of a confidential informant's identity; (3) the court erred in allowing evidence of another crime to be heard; (4) the court erred in submitting the 21 U.S.C. § 846 charge to the jury; (5) the court erred in submitting the 18 U.S.C. § 924(c) charge to the jury; (6) there was improper contact between the government's case agent and members of the jury; and (7) the court erred in sentencing. We affirm.

## I.

Acting pursuant to a tip from a confidential informant, Minnesota Bureau of Criminal Apprehension Special Agent Eugene Leatherman investigated an alleged PCP trafficking scheme involving Sykes and one Douglas Smieja in November 1990. Agent Leatherman obtained a search warrant for Sykes' residence on November 19, 1990, and executed the warrant that evening. In the basement of Sykes' residence, police found 169 grams of liquid PCP, an electronic scale, a pager, and three firearms. In an upstairs bedroom, police also found $870 in cash.

At trial, two witnesses testified for the government under subpoenas and grants of immunity. These witnesses indicated that they had obtained PCP from Sykes in exchange for either money or other material items many times in the preceding six

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

months. They testified that the transactions took place in Sykes' basement. One witness had actually obtained PCP from Sykes on November 19, 1990, the day of the search.

Witnesses also introduced evidence at trial connecting Sykes with a large amount of PCP after November 19, 1990. These witnesses testified that Montclair, California police officers, acting pursuant to a search warrant, had found 173 grams of PCP in a hotel room registered to Sykes on July 5, 1991.

## II.

### A. Government Case Agent as Witness

Sykes argues that the district court committed reversible error by allowing Special Agent Robert Bushman, who was appointed as the government's case agent, to sit at the prosecution table throughout the trial and then to testify as an expert.

Federal Rule of Evidence 615 provides that witnesses may be excluded from hearing the testimony of other witnesses. Rule 615, however, contains exceptions. Federal Rule of Evidence 615(2) states that the rule does not authorize the exclusion of "an officer or employee of a party which is not a natural person designated as its representative by its attorney." The Senate Judiciary Committee's notes to this rule specifically provide that this exception should be interpreted to allow government case agents to remain at the counsel table throughout the trial. Fed.R.Evid. 615 judiciary committee's notes.

[1] The decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion. *United States v. Williams*, 604 F.2d 1102, 1115 (8th Cir.1979). Sykes attempts to distinguish his case from cases allowing such testimony on the basis that the government agent, Bushman, testified as an expert. Sykes argues that because Bushman testified as an expert, he should have been sequestered during other testimony. However, Sykes offers nothing to support such a distinction. Federal Rule of Evidence 615 does not differentiate between expert and non-expert witnesses. Furthermore, the decision whether to allow an expert witness to remain throughout trial to hear other testimony "is within the discretion of the trial judge and should not normally be disturbed on appeal." *United States v. Burgess*, 691 F.2d 1146, 1157 (4th Cir.1982) (quoting *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 629–30 (6th Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978)).

In order to show an abuse of discretion by the trial court, Sykes must show prejudice. *United States v. Woody*, 588 F.2d 1212, 1214 (8th Cir.1978), *cert. denied*, 440 U.S. 928, 99 S.Ct. 1263, 59 L.Ed.2d 484 (1979). Sykes has failed to show any prejudice in this case because Bushman's expert testimony related to matters separate and distinct from the testimony of the other government witnesses. *See id.* In his testimony, Bushman repeatedly stressed that he did not take part in the November 19, 1990, search of Sykes' house, and he testified only as to his expert opinions. There is no possibility that the previous testimony had any effect on Bushman's testimony and there was no prejudice because Bushman's expert testimony was distinct from the other witnesses' occurrence testimony. Because Sykes has failed to show prejudice, we find that the district court did not abuse its discretion by allowing Bushman to remain at counsel's table throughout the trial and to testify as an expert.

### B. Disclosure of Informant's Identity

The decision whether to release an informant's identity is governed by an abuse of discretion standard. *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir.1991). There is no absolute rule requiring disclosure. *United States v. Johnson*, 892 F.2d 707, 710 (8th Cir.1989). In the present case, the informant was a confidential tipster who alerted authorities that a conspiracy to distribute PCP was occurring, but did not witness or participate in the actual offenses. In tipster cases such as this, "disclosure is generally not material to the outcome of the case and

is therefore not required." *Harrington*, 951 F.2d at 878.

In order to obtain disclosure, the defendant has the burden of showing that disclosure would be material and helpful to his case. *Johnson*, 892 F.2d at 710. In this case, Sykes has not met this burden. A defendant demonstrates materiality by showing a reasonable probability exists that the trial outcome would have been different if the evidence had been revealed to the defense. *Harrington*, 951 F.2d at 878. Sykes has presented no evidence that disclosure of the informant's name would have aided his defense. In fact, testimony at trial suggested that the informant's testimony would have severely hurt Sykes' defense. Because Sykes had failed to show materiality, the trial court was within its discretion in not permitting disclosure of the informant's identity.

### C. Evidence of Other Crimes

Sykes asserts that the court erred in allowing a Montclair, California police officer and a chemist analyst to testify regarding an unrelated alleged drug crime involving Sykes on July 5, 1991. These two witnesses testified that 173 grams of PCP had been found in Sykes' hotel room.

The government introduced this testimony pursuant to Federal Rule of Evidence 404(b). This rule provides that evidence of other crimes may be admitted only for limited purposes, such as showing motive, intent, opportunity, or knowledge. Fed.R.Evid. 404(b). This court has established a four-part test for determining admissibility of Rule 404(b) evidence. Such evidence is admissible if it is "(1) relevant to a material issue; (2) of crimes similar in kind and reasonably close in time to the crime charged; (3) sufficient to support a jury finding that the defendant committed the other crimes; and (4) more probative than prejudicial." *United States v. Yerks*, 918 F.2d 1371, 1373 (8th Cir.1990). Additionally, this court views Rule 404(b) as a rule of inclusion, "permitting admission of other crimes evidence unless it tends to

prove only the defendant's criminal disposition." *United States v. Dobynes*, 905 F.2d 1192, 1195 (8th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990). The trial court has broad discretion in admitting such evidence and the trial court's decision will be overturned only when it is clear that the evidence had no bearing on the case. *Id.*

The admission of Rule 404(b) evidence regarding the California offense was appropriate in this case. The possession of almost exactly the same amount of PCP in California was relevant in showing that Sykes possessed the required knowledge and intent for the present offense. The California crime was virtually identical to the present crime and occurred only eight months later.[2] Moreover, the two California witnesses provided sufficient evidence to support a finding that Sykes committed a crime on July 5, 1991. Finally, the evidence was more probative than prejudicial. In this case, the district court gave abundant instructions that the Rule 404(b) evidence was offered only for a limited purpose. These limiting instructions served to minimize the likelihood that prejudice would occur. *United States v. Gustafson*, 728 F.2d 1078, 1084 (8th Cir.), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). The trial court's decision to admit the Rule 404(b) evidence cannot be overturned.

### D. 21 U.S.C. § 846 Conspiracy Charge

Sykes argues that the conspiracy conviction is insupportable because there was no evidence that Sykes ever possessed the PCP and Sykes contends that all the evidence in the case implicates his co-defendant Smieja alone. We disagree.

In reviewing a jury verdict, this court must affirm if there is substantial evidence to support the verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We must examine the evidence in the light most favorable to the government, and give it the

---

**2.** Evidence of subsequent acts is allowable under Rule 404(b). *See United States v. Luttrell,*

612 F.2d 396, 397 (8th Cir.1980); *United States v. Bowman,* 602 F.2d 160, 163–64 (8th Cir.1979).

benefit of all reasonable inferences. *United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir.1990). An appellate court can reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* This standard is a strict one, and a jury verdict should not be overturned lightly. *United States v. Knife*, 592 F.2d 472, 475 (8th Cir.1979).

 Sykes was not charged with a possession offense, but with a conspiracy count. 21 U.S.C. § 846 states that "[a]ny person who attempts or conspires to commit any offense defined in this title shall be subjected to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Distribution of PCP is an offense referenced by § 846. *See* 21 U.S.C. § 841(a). To be guilty of a conspiracy, a defendant need only knowingly contribute his efforts in furtherance of the conspiracy. *United States v. Fanello*, 662 F.2d 505, 509 (8th Cir.1981). Section 846 does not require proof of an overt act in addition to proof of a conspiracy. *United States v. Covos*, 872 F.2d 805, 810 (8th Cir.), *cert. denied*, 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). Furthermore, it is not essential to show actual possession to prove distribution. *United States v. Resnick*, 745 F.2d 1179, 1186 (8th Cir.1984). In this case, viewing the evidence in the light most favorable to the government, there is sufficient evidence to establish a conspiracy to distribute. *See United States v. McCaghren*, 666 F.2d 1227, 1232 (8th Cir.1981).

### E. 18 U.S.C. § 924(c) Gun Charge

 Sykes argues that there was insufficient evidence to support his conviction on the charge of using a firearm in connection with a drug trafficking crime.

Testimony at trial indicated that drug transactions had taken place in the basement of Sykes' home. It is undisputed that Gregory Sykes was living in this house along with his parents, who owned the home. The defense also offered testimony that Sykes' co-defendant, Douglas Smieja, was living in the house as well. The prosecution witnesses testified that the drug transactions had taken place at a table in a living area located in the basement. Both prosecution and defense witnesses also testified that the basement contained a separate bedroom. The bedroom contained a gun cabinet with sliding glass doors in which investigators found an unloaded .32 caliber Colt revolver resting on a shelf. The gun cabinet also had a drawer below the compartment enclosed by the glass doors. The Colt revolver found in the upper part of the gun cabinet is the basis for the 18 U.S.C. § 924(c) charge.

The government offered photograph exhibits, accompanied by testimony, which showed that the sliding glass doors of the gun cabinet were both pushed to one side, leaving the revolver readily accessible at the time of the search on the evening of November 19, 1990. The government also submitted photos and testimony showing that there were small amber bottles in the bedroom containing liquid PCP within three feet of the revolver.

The defense, however, offered testimony implying that the glass doors of the gun cabinet were locked on November 19, 1990. The defendant's mother testified that the lock which was originally on the sliding glass doors was missing after the search on November 19. She testified that she found a metal cross-bar which was part of the glass door locking mechanism at the bottom of the gun cabinet after the search, but she could not find the rest of the lock. After November 19, 1990, upon defense counsel's instructions, Mrs. Sykes purchased a new lock mechanism for the glass gun cabinet doors, installed it, and then took photographs of the locked cabinet. These photos, taken after the date of the search, were submitted as defense exhibits. Based on this evidence, the defense contends that the gun cabinet was locked on the night of the 19th as well.[3]

---

3. In response to a direct question at oral argument, Sykes' counsel asserted that the entire gun cabinet was locked on November 19, 1990.

Upon request of this court, counsel later supplied a list of 16 citations to the trial transcript which he offers, in part, to support his conten-

18 U.S.C. § 924(c)(1) states in relevant part: "Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...." The phrase "uses or carries" has been interpreted in many cases from this circuit. This court has recognized "the utility of firearms in advancing criminal adventures in narcotics." *United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir. 1985). A criminal need not brandish or fire a weapon in order for use to occur. *United States v. Matra*, 841 F.2d 837, 843 (8th Cir.1988). Instead, "the presence and availability in light of the evident need demonstrates the use of the firearm to commit the felony." *LaGuardia*, 774 F.2d at 321. This court has noted that "the mere presence and ready availability of a firearm at a house where drugs are dealt constitutes the 'use' of a gun during a narcotics offense." *United States v. Drew*, 894 F.2d 965, 968 (8th Cir.), *cert. denied*, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990).

It is inconsequential that the gun was located in a different room from where the drug transactions occurred. This court has stated, "[t]he fact that a gun is located in a room that is not the center of drug transactions does not preclude the possibility that a drug dealer intended to use it to support his operations.... The key is always whether the placement of the gun or guns suggests they would be quickly available for use in an emergency." *United States v. Lyman*, 892 F.2d 751, 754 n. 4 (8th Cir.1989), *cert. denied*, — U.S. —, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990). In at least three cases, this court has upheld § 924(c) convictions when the guns and drugs have been located in different parts of a residence. *See United States v. Bennett*, 956 F.2d 1476 (8th Cir.1992); *United States v. Townley*, 929 F.2d 365 (8th Cir.1991);

*United States v. Curry*, 911 F.2d 72 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).

The jury needs only to find a "sufficient nexus" between a gun and drug trafficking in order to sustain a § 924(c) conviction. *United States v. Watson*, 953 F.2d 406, 409 (8th Cir.1992). Furthermore, "[i]t is sufficient to show that the defendant kept the firearms readily accessible to protect and facilitate the drug enterprise." *United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir.1990). In this case, viewing all evidence in the light most favorable to the government, we conclude that the jury could reasonably find that the gun was readily accessible and that there was a sufficient nexus between the revolver and the drug trafficking. Sykes' conviction on the § 924(c) charge is amply supported.

#### F. Improper Jury Contact

Sykes claims that government case agent Bushman improperly was allowed to take exhibits into the jury room and to walk down a stairwell with the jury foreman. Sykes, however, has offered nothing in the record to substantiate these statements. This court cannot give credence to bald assertions which have no support in the record on appeal.

#### G. Sentencing

Sykes also claims that the court erred in sentencing. He argues that the court did not follow the suggested guidelines and recommendations of the United States Probation Office. He also claims that the Probation Office submitted a separate "confidential" letter to the district court. Sykes' counsel contends that he did not have access to this alleged letter and was not aware of its existence until after the close of sentencing.

After a careful review of the record, we find that Sykes' claims are wholly without merit. The district court applied the statutory minimum of 120 months for the PCP

---

tion that the glass doors were locked. This court has carefully reviewed each of these references. These citations to the transcript do not

in any way support the conclusion that the doors to the gun cabinet were locked on November 19, 1990.

trafficking offense, and an additional 60 months which is the statutory minimum for the gun offense. This sentence was entirely appropriate. Furthermore, there is no support in the record for Sykes' contention that the Probation Office sent a letter to the district court. Accordingly, the district court did not err in sentencing Sykes.

### III.

For the foregoing reasons, the convictions and Sykes' sentence are affirmed.