UNITED STATES of America, Appellee,

v.

Leon FRAYER, Appellant.

UNITED STATES of America, Appellee,

v.

Gary HANEY, Appellant.

UNITED STATES of America, Appellee,

v.

Ambrosio PEREZ–MURGUIA, also known as Hueto, Appellant.

UNITED STATES of America, Appellee,

v.

Larry HANEY, Appellant.

Nos. 92–3048, 92–3129, 92–3168 and 92–3262.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1993.

Decided Nov. 29, 1993.

Rehearing Denied in No. 92–3129 Jan. 6, 1994.

Rehearing Denied Jan. 19, 1994.

Sam T. Heuer, Little Rock, AR, argued, for Frayer.

Bobby R. McDaniel, Jonesboro, AR, argued, for Gary Haney.

Milton A. DeJesus, Little Rock, AR, argued, for Perez–Murguia.

Andrew L. Clark, Little Rock, AR, argued, for Larry Haney.

Kevin T. Alexander, Asst. U.S. Atty., Little Rock, AR, argued (Richard M. Pence, U.S. Atty., and Todd Newton and Laura E. Partlow, on the brief), for U.S.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Leon Frayer, Gary Haney, Ambrosio Perez–Murguia, and Larry Haney appeal their convictions for conspiracy to distribute cocaine and marijuana. Leon Frayer also appeals his firearm conviction. We affirm the convictions of Frayer, Gary Haney, and Perez–Murguia. We reverse the conviction of Larry Haney.

## I. BACKGROUND

The indictments in this case were the result of an investigation by agents of the United States Customs Service and the Drug Enforcement Agency (DEA). The investigation began in early 1991, when an informant introduced Customs Service Agent John Turner to Jerry Massey (sometimes known as Hershel Massey), a drug-dealer living near Saltillo, Mexico. After that introduction, Agent Turner, using the alias of "John Anthony," had numerous telephone conversations with Massey, and Agent Turner recorded each one. In those taped conversations, Agent Turner and Massey extensively discuss drug transactions. Through his investigation, Agent Turner came to believe that Massey was the "kingpin" of a large drug operation. Although Massey was indicted in this case, he is incarcerated in Mexico and was not extradited to stand trial in these proceedings.

In early summer 1991, Massey agreed to sell Agent Turner 150 pounds of marijuana at $750 a pound. Agent Turner planned to have another undercover agent on the Mexican border take delivery of the marijuana from an individual known to the agents as "Paco" and pay Paco $90,000. Agent Turner would then meet Massey's representative in Little Rock and pay that individual $22,500. Payment of the $22,500 was contingent on completion of the delivery. On July 2, 1991, Agent Turner met Larry Haney in the parking lot of AP's Seafood, in Jacksonville, Arkansas. Their conversation was electronically monitored. Larry Haney told Agent Turner that he and his brother, Gary, could "move every pound you can get." During the meeting, Larry called Gary from a pay phone, and handed the phone to Agent Turner. Agent Turner testified that Gary told him that something had gone wrong in Mexico and that the deal was off. Larry contends that he knew nothing about a drug deal. He testified that he thought his brother, Gary, was involved in a leather importing business

and that Gary sent him to the restaurant to pick up some paperwork. Larry and Gary Haney were involved in the flea market business and there was evidence that merchandise is referred to in pounds in the flea market business.

After the marijuana deal fell through, Agent Turner and Massey negotiated for the sale of 100 kilograms of cocaine. One kilogram would be "fronted" and delivered to Agent Turner in Little Rock, Arkansas, and Agent Turner would pick up the remainder in Houston, Texas. On September 6, 1991, Massey told Agent Turner that a man named "Hueto" would deliver the kilogram of cocaine to Little Rock. A week later, Agent Turner and Agent Fehrenbach of the DEA met "Hueto," a/k/a Perez–Murguia, at the Otter Creek Holiday Inn in Little Rock. Perez–Murguia delivered one kilogram of cocaine and arrangements were made for the other 99 kilograms to be delivered in Houston, Texas, later in September 1991.

On September 13, 1991, Agent Turner contacted both Massey and Perez–Murguia to arrange to pay for the kilogram that had already been delivered and to arrange delivery of an additional 150 kilograms of cocaine. The agreed-upon price for the cocaine was $2,625,000 to be paid on delivery in Houston plus $500,000 to be paid to Massey. On September 17, 1991, Agents Turner and Fehrenbach met Perez–Murguia in Houston. The agents paid Perez–Murguia $16,500 for the kilogram that had been fronted to them, and flashed over $400,000 in cash to show that they could pay for the rest. The meeting was video-taped. Undercover agents did not take delivery of the cocaine because Perez–Murguia refused to deliver the cocaine to the hotel and Agent Turner was not willing, for security reasons, to go to a warehouse to pick up the cocaine.

In October and November 1991, Agent Turner continued negotiations with Massey for further drug transactions. In early December, Massey agreed to deliver 40 kilograms of cocaine to Agent Turner's representatives in Dallas for $21,500 per kilogram (a total sale price of $860,000). Of that price, $19,500 per kilogram was to be paid at the time of delivery in Dallas and $2,000 per

kilogram ($80,000) was to be paid to people in Arkansas working under Massey's direction: $20,000 to Frayer and $60,000 to Gary Haney. Agent Turner also convinced Massey to advance him $3,000 in travel expenses, feigning unhappiness about having travelled to Houston without completing a drug deal. Massey told Agent Turner that a man named "Leon" would meet him with the money.

On December 4, 1991, Leon Frayer met Agent Turner at AP Seafood in Jacksonville, Arkansas. Frayer gave Agent Turner $3,000 in one-hundred dollar bills for travel expenses. In conformity with the plans made earlier by Agent Turner and Massey, Agent Turner then took Frayer to a motel in North Little Rock and Frayer checked in. Frayer was directed to wait in the motel room until the deal in Dallas was completed. Agent Fehrenbach called Frayer three times at the motel. In one conversation, Frayer mentions delivering money to "Gary." Agent Fehrenbach later called Frayer to report that the transaction had been completed and to tell him that she would pick him up at the motel to pay him the money.

Frayer was arrested as he left the motel. Police officers searched him and found a loaded .22 caliber handgun and brass knuckles in his jacket pockets. He consented to a search of his motel room and the searching officers found notes in his room containing the names "John," "Hershel Massey," "Gary Haney," and "Ralph Cagle" (Cagle is Massey's associate). Frayer was later interviewed by police and admitted that he had wired money to Massey in early summer 1991 for a "wacky-tobacky" (marijuana) deal.

Meanwhile, on that same day, December 4, 1991, Agent Turner and Massey again made telephone contact to finalize the deal. Massey told Agent Turner to put $63,000 in an ice chest and to deliver it to Gary Haney (this amount included repayment of the travel advance). Gary Haney then called Agent Turner (using a phone number Agent Turner had given only to Massey) to arrange a meeting at the Waffle House in Little Rock. Both Gary Haney and Larry Haney met Agents Turner and Fehrenbach in the parking lot of the Waffle House. Their conversa-

tion was electronically monitored. The Haneys were later arrested in the parking lot. Meanwhile, DEA Agent Vic Routh and Perez–Murguia were executing the drug sale in Dallas. Perez–Murguia was arrested as he attempted to sell eight kilograms of cocaine to undercover Agent Routh.

After their arrests, each defendant was charged with a separate conspiracy to distribute cocaine and to distribute marijuana. Frayer was also charged with use of a firearm in connection with a drug offense.

Prior to trial, the defendants moved to depose Massey, who was incarcerated in Mexico. The district court allowed the deposition of Massey by telephone. In his deposition, Massey asserted the Fifth Amendment with regard to his own culpability. He also stated that he had told the Haney brothers that he was in the leather importing business and that they were not aware he was actually in the drug business.

At trial, the district court initially sustained the government's motion to strike Massey's deposition testimony. Defense counsel were instructed not to refer to the deposition in their opening statements. Midway through the trial, however, one of the defense counsel inadvertently referred to the deposition. After a conference outside the presence of the jury, the government withdrew its motion to strike and the district court admitted Massey's deposition testimony. The district court also offered the defendants an opportunity to supplement their opening statements, which the defendants declined.

The jury found Gary Haney guilty on both conspiracy counts. Frayer was found guilty on the marijuana conspiracy and the firearm counts. Perez–Murguia was found guilty on the cocaine conspiracy count. Larry Haney was found guilty on the marijuana conspiracy count.

Appellants assert numerous errors, only a few of which merit discussion. Perez–Murguia contends that his conviction puts him in double jeopardy because he had already been convicted for distribution—one of the overt acts in furtherance of the conspiracy—in federal district court in Texas. Leon Frayer contends: 1) that there is insufficient evidence to convict him on the marijuana count; 2) that the district court erred in refusing to allow discussion of the Massey deposition in opening statements; 3) that the district court erred in allowing hearsay from Massey's deposition to be introduced; 4) that he was prejudiced by remarks from a co-defendant's attorney; and 5) that the district court erred in allowing introduction of his confession in rebuttal. Gary Haney repeats Frayer's assertions concerning Massey's deposition. He also asserts that he was prejudiced by the district court's disrespectful remarks to counsel and by the erroneous admission of both hearsay and rebuttal evidence. Larry Haney contends that there is insufficient evidence to convict him, or, alternatively, that he should have been given a minimal participant reduction in sentencing.

## II. DISCUSSION

### A. Sufficiency of Evidence

 Gary Haney, Larry Haney and Leon Frayer contend that the evidence is insufficient to convict them of conspiracy. In reviewing a jury verdict, we must examine the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Sykes*, 977 F.2d 1242, 1246–47 (8th Cir.1992). An appellate court can reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* This standard is a strict one and a jury verdict will not be overturned lightly. *Id.* To be guilty of a conspiracy, a defendant need only knowingly contribute his efforts in furtherance of the criminal ends of the conspiracy. *Id.* With those standards in mind, we find sufficient evidence to support the convictions of Leon Frayer and Gary Haney, but insufficient evidence to support the conviction of Larry Haney.

 There is evidence which links Gary Haney to both conspiracies. His name is mentioned on the tapes of recorded conversations between Massey and Agent Turner. The fact that he told Agent Turner in July 1991 that the marijuana deal had fallen through shows he communicated with Massey. There is also evidence of telephone

contact between Massey and Gary Haney before the July meeting. His link to the cocaine conspiracy is demonstrated by Massey's instruction that Agent Turner deliver $63,000 in an ice chest to Gary Haney. Gary Haney arranged the meeting place and appeared there. Gary Haney also discussed the details of the cocaine delivery with Agent Turner. We therefore find sufficient evidence to convict Gary Haney on both counts.

■ Leon Frayer contends that there is no evidence that he entered the drug ring until August 1991 and therefore was not part of the marijuana scheme which ended in July 1991. Frayer stated to police officers after his arrest, however, that he had wired money to Massey in early summer 1991 for a "wacky-tobacky" scheme. Accordingly, there is evidence to support his conviction on the marijuana conspiracy count.

■ Frayer also asserts that there is insufficient evidence to convict him on the firearm count because he used the firearm in connection with the cocaine conspiracy count, of which he was acquitted. A conviction under 18 U.S.C. § 924(c) requires only that a defendant carry a firearm in connection with a drug crime; it is not necessary that he be convicted of the underlying drug offense. *United States v. Laing*, 889 F.2d 281, 288 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1069, 110 S.Ct. 1790, 108 L.Ed.2d 792 (1990); *United States v. Hunter*, 887 F.2d 1001, 1003 (9th Cir.1989), *cert. denied*, 493 U.S. 1090, 110 S.Ct. 1159, 107 L.Ed.2d 1062 (1990); *see also United States v. Watson*, 953 F.2d 406, 409 n. 5 (8th Cir.1992) (affirming a conviction under 924(c) even though defendant had been acquitted of predicate offense). We find the evidence sufficient to support Frayer's conviction on the firearm count.

■ Larry Haney's conviction is another matter. He is not specifically mentioned on any of the incriminating tapes. The only evidence tying Larry Haney to the marijuana conspiracy is his presence at the meeting place in July 1991. There is no evidence that he knew that he was there to be part of a drug deal. His statement that we "could move every pound you can get," without other corroborating evidence, simply does not prove beyond a reasonable doubt that he was aware of the conspiracy. He contends that this comment referred to the leather importing business and there is some evidence to support that explanation. There may be evidence to support his involvement with the later cocaine deal, but his involvement with that scheme does not prove beyond a reasonable doubt that he was part of the earlier marijuana scheme. Accordingly, viewing the evidence in the light most favorable to the government, we find the evidence insufficient to convict Larry Haney on the marijuana count.[1]

### B. Double Jeopardy

■ Perez–Murguia contends that he was twice prosecuted for the same conduct in violation of the Double Jeopardy Clause of the Fifth and Fourteenth Amendments of the Constitution.

■ The double jeopardy bar applies only to prosecutions or convictions which cannot survive the "same elements" test. *United States v. Dixon*, — U.S. —, —, 113 S.Ct. 2849, 2859, 125 L.Ed.2d 556 (1993). The same elements test inquires whether each offense contains an element not contained in the other; if so, they are not the same offense and the Double Jeopardy Clause does not bar additional punishment and subsequent prosecution. *Id.* Perez–Murguia was convicted in Texas for possession of cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). The conviction at issue here is for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846.[2] Each of the offenses involve differ-

---

1. In light of our finding, we need not address Larry Haney's contention that he should have been given a minimal participant reduction in sentencing. Neither need we reach his evidentiary arguments.

2. The Supreme Court has abandoned the "same conduct test" of *Grady v. Corbin*, 495 U.S. 508,

110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *See United States v. Dixon*, — U.S. —, —, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993). Thus we need not reach the issue of whether the same conduct was involved. We note, however, that the possession with intent to distribute charge to which Perez–Murguia entered a plea of guilty in federal district court in Texas arose out of Perez–

ent elements.[3] Thus the Double Jeopardy Clause does not prevent a conspiracy prosecution after a prosecution for possession with intent to distribute. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Dixon*, — U.S. at — – —, 113 S.Ct. at 2859–60 (1993) (once court decides offenses involve different elements, double jeopardy inquiry ends). Accordingly, we find that Perez–Murguia's conviction does not violate the Double Jeopardy Clause.

### C. Massey's Deposition

■ Leon Frayer and Gary Haney assert that their defense was crippled by their inability to refer to Massey's deposition in opening statements. Their defense was that Massey deceived them into believing they were involved in a legitimate leather importing business. They assert prejudice because the government was allowed to put on its case, including playing the incriminating tapes, before they were allowed to make the jury aware of the deposition testimony which ostensibly exonerates them.

■ The district court has broad discretion in determining the admissibility of evidence, and its rulings will be overturned only if they constitute abuses of that discretion. *United States v. Willis*, 997 F.2d 407, 414 (8th Cir.1993). In a conspiracy trial, the district court's discretion in evidence ques-

tions is particularly broad. *Id.* In any event, we will not disturb the evidentiary rulings of the district court absent a showing of prejudice. *Hicks v. Six Flags Over Mid–America*, 821 F.2d 1311, 1316 (8th Cir.1987).

Although we are inclined to believe that the district court's initial ruling that the deposition testimony was inadmissible was correct, we need not reach that issue because the defendants have not shown prejudice in light of the eventual receipt of the evidence. The jury was given the opportunity to consider the defense of "being duped," bolstered as it was by Massey's testimony, and the jury apparently did not believe it. In light of the other evidence of the conspiracy, we find that the delayed receipt into evidence of Massey's deposition did not prejudice the defendants. We have considered Haney's and Frayer's other contentions with respect to Massey's deposition and find them lacking in merit.

### D. Trial Judge's Actions

■ After Gary Haney had rested his case, and during the cross-examination of co-defendant Larry Haney, counsel for Gary Haney attempted to interpose an objection. The district court instructed counsel for Gary Haney not to register further objections, but to consult with counsel for Larry Haney.[4] He asserts this admonishment in the presence of the jury destroyed his counsel's cred-

---

Murguia's delivery of eight kilograms of cocaine to undercover Agent Routh in Dallas. The present prosecution and conviction involves the earlier conspiracy to deliver a kilogram of cocaine to undercover Agents Turner and Fehrenbach in Little Rock, Arkansas.

3. To sustain a conviction for possession with intent to distribute, the government must prove beyond a reasonable doubt that the defendant knowingly possessed and intended to distribute an illegal drug. *United States v. Cortez*, 935 F.2d 135, 143 (8th Cir.1991). To convict a defendant of conspiracy to distribute under 21 U.S.C. § 846, the government must prove an agreement between two or more people, including the defendant, for the purpose of engaging in distribution of drugs. *United States v. Aranda*, 963 F.2d 211, 214 n. 3 (8th Cir.1992).

4. The colloquy went like this:

THE COURT: Let's not double team on the government here now. You might consult

with Mr. Clark, but we're not going to have two defense counsel registering objections. You may go over there and consult with Mr. Clark, but we're not going to have you objecting simultaneously along with Mr. Clark.
MR. MCDANIEL: If it please the court, and I respectfully state to the Court, in my representation of Gary Haney, who is tried jointly with Larry Haney—
THE COURT: Yes.
MR. MCDANIEL: —and the evidence with Larry Haney is being presented to this same jury, I respectfully submit it's my duty if I think the government is doing something inappropriate with any witness, Larry Haney, Leon Frayer or anybody else. I respectfully submit to the Court—
THE COURT: You have rested.
MR. MCDANIEL: But that doesn't mean I don't have a right to object, Your Honor.
THE COURT: I'm directing you whenever you have an objection to consult with Mr. Clark. Understood?
Transcript at 1610–11.

ibility in the eyes of the jury and denied him effective and zealous representation of counsel.

Later, out of the presence of the jury, the district court clarified its ruling:

> THE COURT: ... Relative to Mr. McDaniel's participation, the Court still adheres to the order that if you want to object during the inquiry pertaining to Mr. Larry Haney, you consult with Mr. Clark. If there's anything that relates to Mr. Gary Haney, you stand up and you identify the fact that you are registering an objection in behalf of Mr. Gary Haney. We're not preventing you from objecting and we're not preventing you from representing Gary Haney, but when it comes down to Larry, we will not permit you to double team the government. He's got competent counsel and he would have not been appointed if the Court felt he was not competent in representing him.
>
> You may consult with him, but when he registers an objection and you jump up and register an objection also supporting Larry, I think that's double teaming in a sense.

Transcript at 1632–33. The district court later stated, "the Court in no way seeks to restrict you in representing Gary Haney." Transcript at 1634.

 Traditionally, we accord the trial judge "broad discretion in the conduct of [a] trial". *Dobson v. Bacon Transp. Co.*, 607 F.2d 805, 807 (8th Cir.1979). Accordingly, "trial courts have discretion to place reasonable limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." *Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir.1987). We therefore typically review the conduct of a trial only for abuse of discretion. *First Nat'l Bank and Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1304 (8th Cir.1991).

We note that the district court did not deny counsel an opportunity to object on behalf of his client. The restriction went merely to counsel for Gary Haney objecting on behalf of Larry Haney. Even that restriction was not absolute; counsel was instructed only to confer with Larry Haney's counsel so that only one attorney would ob-

ject. While the admonishment might more properly have been delivered outside the presence of the jury, we find that the district court's conduct does not amount to an abuse of discretion. In addition, Gary Haney has not shown prejudice as a result of the admonishment. He has not pointed us to any piece of evidence or testimony which, if objected to, could have made a difference in the outcome of this trial. We have reviewed the transcript and find, in the context of the entire trial, no abuse of discretion.

## III. CONCLUSION

For the reasons stated above, the convictions of Leon Frayer, Ambrosio Perez–Murguia and Gary Haney are affirmed; the conviction of Larry Haney is reversed.