# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1343
_____

United States of America

*Plaintiff - Appellee*

v.

Marc Robert Engelmann

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: September 21, 2012
Filed: December 19, 2012

_____

Before BYE, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury found Marc Robert Engelmann guilty of conspiracy to commit bank and wire fraud under 18 U.S.C. § 371, bank fraud under 18 U.S.C. §§ 2 and 1344, and wire fraud under 18 U.S.C. §§ 2 and 1343. Engelmann moved for a new trial on the grounds that (1) the district court failed to properly instruct the jury on his "good faith" defense and (2) a conversation between two government witnesses during trial,

in contravention of a sequestration order, violated his rights to a fair trial and to effective assistance of counsel. He also requested an evidentiary hearing on the motion. The district court denied Engelmann's motion without a hearing, sentenced him to 36 months imprisonment, and ordered him to pay three different financial institutions a total of $392,937.73 in restitution. Engelmann appeals the district court's denial of his motion for a new trial, its denial of a hearing on the motion, its application of a sentencing enhancement based on the amount of loss, and its restitution awards.

In this opinion, we only address one of Engelmann's points on appeal. Specifically, we vacate the district court's denial of Engelmann's motion for a new trial with respect to the alleged sequestration violation. We remand for the district court to conduct an evidentiary hearing on the limited issue of whether the government witnesses' conversation warranted a new trial, to make supplemental findings of fact, and to reconsider Engelmann's motion for a new trial in light of any evidence presented at this hearing. We retain jurisdiction to address all of Engelmann's points on appeal after these further district court proceedings.

I.

Engelmann was a real estate attorney and represented a seller in nine different transactions that form the basis for his convictions. In each of these transactions, the buyer and seller entered into a "dual price" purchasing agreement whereby they provided lenders with inflated sales prices to secure higher loan amounts. The actual sales prices were lower than the amounts provided to the lenders, and the buyers pocketed the difference. All nine mortgages went into first payment default, and the properties were sold at foreclosure.

Engelmann's defense at trial was that he did not have the requisite intent to defraud because he thought the lenders knew of the dual pricing scheme. During

trial, a sequestration order prevented witnesses from being in the courtroom while other witnesses were testifying. Two FBI Special Agents, Jeff Huber and Jim McMillan (collectively "the Agents"), testified at trial that Engelmann told them he knew the lenders were unaware of the dual pricing arrangements. Engelmann, however, testified the Agents merely asked him whether the lenders would be victims of fraud if the lenders did not know of the dual pricing structure, and Engelmann responded that they would be victims under those facts. In closing argument, the prosecutor characterized the Agents' version of Engelmann's statement as "the most important evidence that has been presented" and "the most powerful evidence about the defendant's guilt in this case." The prosecutor argued Agent McMillan's testimony regarding the statement was especially credible since Agent McMillan was not in the courtroom while Agent Huber testified and thus "didn't have the benefit of hearing Special Agent Huber's testimony" before giving his own.

After the jury returned its guilty verdict, a man identifying himself as Richard McNamara called the district court judge's chambers. According to the district court's summary of this phone call, McNamara

> informed the Court that he had attended the Engelmann trial and wanted to advise the Court of what he perceived as an "injustice" that had occurred during trial. Mr. McNamara reported that, during a court recess after SA Huber had testified, Mr. McNamara observed SA Huber talking to SA McMillan, who had not been in the courtroom during SA Huber's testimony. According to Mr. McNamara, the two agents were discussing SA Huber's testimony regarding the procedure and techniques the agents had used during the case investigation. Mr. McNamara also reported that he saw SA Huber look at the notes he had referred to during his testimony. Mr. McNamara said he felt this observation was significant because SA McMillan later gave testimony consistent with SA Huber's testimony regarding the agents' procedure and techniques in their investigation and as to what [Engelmann] had told them during the interview. Mr. McNamara further expressed that it was his recollection that the Government argued in closing that SA

-3-

Huber and SA McMillan had testified independently and that they had never spoken to one another about their testimonies.

United States v. Engelmann, 827 F. Supp. 2d 985, 988 (S.D. Iowa 2011) (footnote omitted). The district court wrote a letter to both parties informing them of the communication.

Engelmann moved for a new trial on the basis that the conversation deprived him of his rights to a fair trial and to effective assistance of counsel. More specifically, Engelmann argued that since the conversation did not come to light until after the jury's verdict, he did not have the opportunity to cross-examine the Agents regarding the alleged communication and that the prosecutor made false statements to the jury in closing arguments. Engelmann also requested an evidentiary hearing on the motion.

The district court denied Engelmann's motion for a new trial without making any reference to his request for an evidentiary hearing. First, the court held the record did not contain sufficient evidence of McNamara's observations since McNamara neither submitted a sworn affidavit nor was an officer of the court under a sworn duty to the court. Id. at 991. Second, the court said that even if everything McNamara said were true, Engelmann still would not be entitled to a new trial because the Agents' conduct did not violate the sequestration order. Id. at 991-92. The court reasoned the sequestration order did not forbid Agent Huber from being present in the courtroom during Agent McMillan's testimony because Agent Huber was the government's designated case agent at trial. Id. at 992. Furthermore, the "sequestration order merely excluded witnesses from the courtroom; it did not prohibit attorneys or SA Huber from meeting with a witness during the trial." Id. Third, the court held that even if the conversation did violate the sequestration order, Engelmann did not show prejudice since the conversation concerned only the

-4-

procedures and techniques of the investigation rather than the substance of Engelmann's confession, and since there was no evidence of collusion. Id.

## II.

"Sequestration of most witnesses is mandatory when requested, but the district court is granted wide latitude in implementing sequestration orders, and the standard of review is abuse of discretion." United States v. Collins, 340 F.3d 672, 680 (8th Cir. 2003) (internal citation omitted). Federal Rule of Evidence 615 provides, in relevant part, that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. However, Rule 615 explicitly "does not authorize excluding . . . an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney." Id. A person designated as a party's representative can be present in the courtroom during witness testimony, and "[t]he decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion." United States v. Sykes, 977 F.2d 1242, 1245 (8th Cir. 1992).

As a preliminary matter, Agent Huber was the government's designated representative in Engelmann's case, while Agent McMillan was not. As such, the parties agree that Agent Huber's presence in the courtroom during Agent McMillan's testimony did not violate the sequestration order. Nor does either party argue the district court erred in allowing Agent Huber to testify. Rather, the only dispute concerns whether the Agents' alleged out-of-court conversation after Agent Huber's testimony but before Agent McMillan's testimony, which allegedly concerned the Agents' investigation of Engelmann and Agent Huber's testimony regarding the same, violated the sequestration order.

Unless a district court specifies otherwise in a particular sequestration order, sequestration orders under Rule 615 do not forbid all contact with all trial witnesses at all times. See, e.g., United States v. Stewart, 878 F.2d 256, 259 (8th Cir. 1989) (holding district court did not err in issuing sequestration order explicitly permitting government agents to communicate with witnesses). "The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty." Collins, 340 F.3d at 681. Applying this principle, we have held that placing two trial witnesses in the same holding cell before either one had testified did not violate Rule 615. Id. We also have upheld a district court's determination, after an evidentiary hearing, that a non-testifying police officer did not violate a sequestration order when he "took notes throughout the trial and relayed this information to government witnesses waiting to testify." United States v. Smith, 578 F.2d 1227, 1235 (8th Cir. 1978).

Applying this precedent, we hold that the district court abused its discretion in denying Engelmann's motion for a new trial without first affording Engelmann an evidentiary hearing concerning the alleged conversation. According to the district court's summary of McNamara's phone call, McNamara accused Agent McMillan of speaking to Agent Huber during a court recess about Agent Huber's earlier testimony. Agent McMillan had not yet testified. Thus, this is not a situation like Collins, which involved pre-testimony contact between witnesses, or like Smith, which involved contact between witnesses and a trial observer. Nor, as the dissent suggests, does this case merely involve allegations that a government's designated representative met with a government witness to prepare for trial. Infra at 12-13. Rather, these are specific allegations that Agent Huber directly disclosed details of his earlier testimony to Agent McMillan before Agent McMillan testified on the very same subject. We implicitly have recognized that sequestration violations are not limited to situations where a witness is present in the courtroom while another witness is testifying. See, e.g., United States v. Vallie, 284 F.3d 917, 921 (8th Cir. 2002) (analyzing whether contact between trial observers and sequestered witnesses

-6-

violated sequestration order); United States v. Kindle, 925 F.2d 272, 276 (8th Cir. 1991) (analyzing whether contact between DEA case agents and sequestered witnesses violated sequestration order). Since sequestration orders are meant "to prevent witnesses from tailoring their testimony to that of prior witnesses," Collins, 340 F.3d at 681, it would be illogical to hold that Agent McMillan, excluded from the courtroom pursuant to a sequestration order, could wait outside the courtroom doors and then discuss with Agent Huber the testimony which Agent Huber had just given.[1]

A district court may properly deny relief related to sequestration violations when the violations do not prejudice a defendant. See, e.g., id. (holding district court did not err in denying motion for mistrial based on sequestration violation when witnesses "offered testimony on two completely different issues that did not overlap and did not involve any of the same facts"); Vallie, 284 F.3d at 921 (holding district court did not err in allowing trial observers to communicate with sequestered witnesses when there was "no evidence that any conversations between trial observers and sequestered witnesses resulted in tailored testimony or otherwise prejudiced" the defendant). Here, however, the prosecutor characterized the Agents' testimony as "the most important evidence that has been presented" and "the most powerful

_____

[1]The dissent cites United States v. Rhynes, 218 F.3d 310, 316 (4th Cir. 2000) and United States v. Sepulveda, 15 F.3d 1161, 1176 (1st Cir. 1993) for the proposition that "[o]ther circuits similarly have read Rule 615 as a mere limitation on witnesses' presence in the courtroom, absent a broader sequestration order." Infra at 11 n.4. However, neither Rhynes nor Sepulveda involved specific allegations of one witness directly disclosing details of prior testimony to a second witness before the second witness testified. See Rhynes, 218 F.3d at 313-16 (holding that Rule 615 did not prevent defendant's attorney from discussing earlier government witness's testimony with later defense witness before defense witness testified); Sepulveda, 15 F.3d at 1175-77 (holding that placing several witnesses in same holding cell during trial was not "automatic violation of a standard sequestration order"). Unlike the situations in Rhynes and Sepulveda, the allegations in Engelmann's case effectively place Agent McMillan in the courtroom during Agent Huber's testimony.

evidence about the defendant's guilt in this case." Under the facts of this case, the district court abused its discretion in denying Engelmann's requested evidentiary hearing, concluding, in the absence of any factual findings regarding the alleged conversation, that the conversation did not violate the sequestration order or prejudice Engelmann.

In so holding, we do not express any opinion on the merits of Engelmann's prejudice argument. The evidentiary hearing might reveal that the Agents' conversation did not concern their trial testimony, that the conversation never took place at all, or that Engelmann was not otherwise prejudiced by the conversation. However, in the absence of an evidentiary hearing under the specific facts of this case, the district court did not have a principled way to determine whether the alleged conversation violated the sequestration order or whether any violation prejudiced Engelmann. Remand is necessary to further develop these issues.

III.

Accordingly, we vacate the district court's denial of Engelmann's motion for a new trial on the limited issue of the alleged sequestration violation. We remand for the district court to hold an evidentiary hearing concerning the Agents' alleged conversation, to make supplemental findings of fact, and to reconsider Engelmann's motion for a new trial in light of any evidence presented at that hearing. We retain jurisdiction over this appeal pending the district court proceedings. See United States v. Khabeer, 410 F.3d 477, 479 (8th Cir. 2005) ("[W]e remand the case to the district court for the limited purpose of making supplemental findings of fact necessary to the resolution of the . . . claims, while retaining jurisdiction.").

GRUENDER, Circuit Judge, dissenting.

The Court contends that because sequestration orders are meant to prevent witnesses from tailoring their testimony to that of other witnesses, "it would be illogical to hold that Agent McMillan, excluded from the courtroom pursuant to a sequestration order, could wait outside the courtroom doors and then discuss with Agent Huber the testimony which Agent Huber had just given." *Ante* at 7. It is not illogical in this case, however, because neither Rule 615 nor the district court's sequestration order prohibited such out-of-court contact, and, even if it did, Special Agent Huber was the Government's designated case agent. Rule 615 does not prohibit a designated case agent, even one who testifies in the case, from conferring with another witness, and to conclude otherwise reads into Rule 615 a limitation on case agent conduct that simply does not exist. Finally, even if the alleged out-of-court contact might be viewed as improper, the district court was within its discretion to find that Engelmann failed to present sufficient evidence to require a hearing. Therefore, I respectfully dissent.

Based on his brief and his counsel's statements at oral argument, Engelmann's sole argument on appeal is that the out-of-court conversation between Special Agents Huber and McMillan violated Rule 615 and the district court's sequestration order.[2] Even assuming that the two agents conferred as suggested to the district court in a

---

[2]The Court notes that before the district court Engelmann argued that the out-of-court conversation also violated his right to a fair trial and to effective assistance of counsel. *Ante* at 4. There is no reference to ineffective assistance of counsel, denial of a fair trial, or any other additional ground for relief anywhere in Engelmann's brief on appeal. Therefore, those issues are waived. *See United States v. Miller*, 588 F.3d 560, 567 (8th Cir. 2009). In addition, Engelmann specifically disclaimed any potential prosecutorial misconduct argument with respect to the prosecutor's closing argument. Oral Arg. at 36:04-36:08. Moreover, to the extent he has an ineffective assistance of counsel claim, it would better be brought under 28 U.S.C. § 2255. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003).

telephone call, neither Rule 615 nor the court's sequestration order was violated. In the absence of a potential violation of Rule 615, or the sequestration order, or any other articulated theory for relief, a remand for a hearing is unnecessary.

Rule 615 requires only that witnesses be "excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. We traditionally have read sequestration orders that invoke Rule 615 narrowly, interpreting them to reach only actual courtroom presence of witnesses. *See, e.g.*, *United States v. Collins*, 340 F.3d 672, 681 (8th Cir. 2003) (holding that pre-testimony conversations between two sequestered witnesses did not violate the court's sequestration order); *United States v. Smith*, 578 F.2d 1227, 1235 (8th Cir. 1978) (holding that Rule 615 was not violated when a police officer took notes during the trial and relayed them to witnesses waiting to testify because the sequestration order was limited to witnesses' exclusion from the courtroom). While a district court under some circumstances may have discretion to enter a broader sequestration order, *see United States v. Kindle*, 925 F.2d 272, 276 (8th Cir. 1991), the district court did not do so here, *see Engelmann*, 827 F. Supp. 2d 985, 992 (S.D. Iowa 2011) (explaining "the Court's sequestration order merely excluded witnesses from the courtroom"), and such a broad order is not required to comply with Rule 615, *see Kindle*, 925 F.2d at 276; *see also United States v. Calderin-Rodriguez*, 244 F.3d 977, 984 (8th Cir. 2001) ("Rule 615 does not require [the] court to forbid contact between [a] DEA case agent and witness during trial.") (citing *Kindle*, 925 F.2d at 276)).[3] In fact, we have said that Rule 615 "does not

---

[3]The Court cites some of these cases for the proposition that "[w]e implicitly have recognized that sequestration violations are not limited to situations where a witness is present in the courtroom while another witness is testifying." *Ante* at 6-7. (citing *United States v. Vallie*, 284 F.3d 917, 921 (8th Cir. 2002); *Kindle*, 925 F.2d at 276). In each of those cases, however, we never reached the issue of whether there was a violation of the district court's sequestration order because we concluded that there was no evidence that any conversations resulted in tailored testimony or in prejudice to the defendant. *See Vallie*, 284 F.3d at 921; *Kindle*, 925 F.2d at 276.

-10-

authorize trial courts to prevent executive branch officials from conferring with their witnesses." *United States v. Stewart*, 878 F.2d 256, 259 (8th Cir. 1989).

Here, Engelmann's allegations, as reflected in the telephone conversation between courtroom observer Richard McNamara and the district court, fall well short of a potential violation of Rule 615 or the district court's sequestration order. An alleged out-of-court conversation between Special Agents Huber and McMillan, by itself, is insufficient to constitute a violation of either Rule 615 or the court's sequestration order. Engelmann makes no allegation that Special Agent McMillan was present in the courtroom or directly overheard Special Agent Huber's testimony. He argues only that an out-of-court discussion between Special Agents Huber and McMillan potentially involving trial testimony is a violation of Rule 615 and the district court's sequestration order. That argument, however, is inconsistent with our narrow view of Rule 615, and the Court's discussion of *Stewart*, *Collins*, and *Smith*, *ante* at 6, does not explain how they support a contrary conclusion.[4] The Court attempts to overcome this hurdle by arguing that "[t]he allegations in Engelmann's case *effectively place Agent McMillan in the courtroom* during Agent Huber's

---

[4]Other circuits similarly have read Rule 615 as a mere limitation on witnesses' presence in the courtroom, absent a broader sequestration order. *See, e.g.*, *United States v. Rhynes*, 218 F.3d 310, 316 (4th Cir. 2000) (en banc) (Rule 615 "serves only to exclude witnesses from the courtroom"); *United States v. Sepulveda*, 15 F.3d 1161, 1176 (1st Cir. 1993) ("Rule 615 contemplates a small[] reserve; by its terms, courts must 'order witnesses excluded' only from the courtroom proper."). The Court attempts to distinguish these cases on the grounds that neither case deals with a situation where the "allegations...effectively place [a witness] in the courtroom during [a case agent's] testimony." *Ante* at 7 n.1. If, however, the Court's purported concern is a sequestered witness's "effective presence" in the courtroom, that concern is equally present in situations like those in *Rhynes* and *Sepulveda*. In fact, the court in *Rhynes* expressly rejected any argument that the "'purpose and spirit' of the sequestration order were compromised" when a defense attorney discussed the contents of a government witness's testimony with a defense witness who had yet to testify. *Rhynes*, 218 F.3d at 317-18.

testimony." *Ante* at 7 n.1 (emphasis added). However, the concept of "effective presence" is found nowhere in the text of Rule 615 and is not supported by precedent.

Moreover, even under the Court's more expansive view that Rule 615 and the sequestration order applied to out-of-court contact between witnesses, I still would not find a violation because Special Agent Huber was the Government's designated case agent. Rule 615 "does not authorize excluding . . . an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney." Fed. R. Evid. 615(2). In the criminal prosecution context, the Government routinely designates a member of law enforcement who is familiar with the case as its "case agent" to serve as the Government's representative. This case-agent exception to Rule 615 ensures fairness and accuracy in courtroom proceedings. *See, e.g.*, 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence, § 6242 (1997) [hereinafter Wright & Gold]. As the Advisory Committee Notes explain:

> The practice is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in—he always has the client with him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty.

Fed. R. Evid. 615, Advisory Committee Notes.

Thus, it is accepted that the case-agent exception permits the case agent to sit at the counsel table throughout trial, *United States v. Riddle*, 193 F.3d 995, 997 (8th Cir. 1999), and testify in court despite the agent's presence during other witnesses's testimony, even if a sequestration order is in place, *United States v. Sykes*, 977 F.2d 1242, 1245 (8th Cir. 1992). Additionally, given that it is "commonplace" for an

attorney to conduct out-of-court consultations with clients and witnesses during the course of trial, *see* Wright & Gold § 6243, it is illogical that a standard sequestration order could be read to prohibit a designated case agent from assisting in trial preparation, including meeting and conferring with witnesses.[5]  As the district court explained, its sequestration order "did not prohibit attorneys or SA Huber from meeting with a witness during trial." *Engelmann*, 827 F. Supp. 2d at 988.  The Court, however, overrides the district court's understanding of its own order.  Instead, the Court would force a testifying case agent to conduct meetings with other witnesses in an artificial setting in which his own testimony—or that of other witnesses who have testified—did not exist.  Such a conclusion undermines the reasons behind the case-agent exception.

As discussed above, in his brief to this court Engelmann failed to articulate any other theory upon which relief might be available to him beyond an alleged violation of Rule 615 and the district court's sequestration order.  Even if he had articulated some other theory, the district court was within its discretion to find that Engelmann failed to present sufficient evidence to require a hearing.  The record contains only a letter from the district court informing the parties of a telephone call it received regarding a conversation between people that the court "assume[d]" to be Special

_____

[5]At least one other circuit also has concluded that Rule 615 permits a designated case agent to sit at the counsel table during the testimony of other witnesses and to aid in trial preparation. *See United States v. Phibbs*, 999 F.2d 1053, 1073 (6th Cir. 1993) (explaining that the terms of Rule 615 do not bar discussion between the government's case agent-witness and another witness in the absence of a court order that the case agent not "discuss the case with any other witnesses").  In contrast, the Court cites no precedent for its implicit conclusion that Rule 615 alone prohibits a designated case agent from discussing trial testimony with a witness.  Of course, the fact and contents of such a discussion—and whether it amounted to improper coaching of the witness—properly would be the subject of cross-examination by the defense. *Id.* (citing *Geders v. United States*, 425 U.S. 80, 89-91 (1976)).

Agents Huber and McMillan.[6] After the district court's letter put the parties on notice of the alleged out-of-court conversation between the agents, Engelmann failed to present a sworn statement or any other evidence to verify the matters raised in the phone call, much less to support "specific allegations that Agent Huber directly disclosed details of his earlier testimony to Agent McMillan before Agent McMillan testified." *Ante* at 6. Nothing in the letter suggests that Engelmann would have had any difficulty obtaining such an affidavit. The letter informed the parties of the trial observer's identity, Richard McNamara, and stated that when "Mr. McNamara was asked his connection to the trial . . . he said that his wife and Engelmann's wife are friends." The Court does not explain why an unverified telephone call from an unsworn observer should be sufficient evidence to compel a hearing, especially where Engelmann apparently did nothing to create a record.

A district court has "wide discretion" in determining whether to grant an evidentiary hearing, *United States v. Baker*, 479 F.3d 574, 579 (8th Cir. 2007) (quoting *United States v. Preciado*, 336 F.3d 739, 747 (8th Cir. 2003)), and we review a district court's decision on whether to grant such a hearing for an abuse of discretion, *see Preciado*, 336 F.3d at 747. I find no abuse of discretion here. In fact,

---

[6]In the letter the district court explains that the caller:

did not mention the agents by name but said one of them was the "good looking guy sitting at the prosecution table" during the trial; thus I assume he was talking about Special Agent Huber. . . . [The observer] said that the court called a "normal recess" and that during the recess, SA Huber went into the hallway and was joined by the other FBI agent whom SA Huber had identified during his testimony as his partner/associate agent in the Engelmann investigation; I assume this was Special Agent McMillan. [The observer] said another gentleman joined the two agents, but [he] did not know the third gentleman's role in the case but "would recognize him" if he saw him.

-14-

if the evidence presented here were sufficient to require an evidentiary hearing, the case-agent exception to Rule 615 would be eviscerated by routine post-trial fishing expeditions into the contents of a case agent's out-of-court contact with witnesses.

To be sure, the primary purpose of sequestration orders is "to prevent witnesses from tailoring their testimony to that of prior witnesses." *See United States v. Collins*, 340 F.3d 672, 681 (8th Cir. 2003). However, the allegations here, even taken at face value, establish no violation of either Rule 615 or the district court's sequestration order in this case, and there is no competent evidence to support the allegations that were made. Engelmann does not articulate any other theory that could entitle him to relief. Therefore, there is no basis to remand for a hearing. Because the Court concludes otherwise, I respectfully dissent from this limited remand, would affirm the district court's decision on this issue, and would proceed to the other matters raised in Engelmann's appeal.

_____