4 F.3d 987
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Carl Kofi MAYERS, Defendant-Appellant.
 No. 92-5217.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: May 14, 1993.
Decided: September 8, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CR-91-414-A)
 Nina Jean Ginsberg, Dimuro, Ginsberg & Lieberman, P.C., Alexandria, Virginia, for Appellant.
 Richard Cullen, United States Attorney, James L. Trump, W. Neil Hammerstrom, Jr., Assistant United States Attorneys, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before HALL, WILKINSON, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Carl Kofi Mayers was convicted by a jury of conspiracy to possess with intent to distribute a kilogram or more of heroin, 21 U.S.C.A. Sec. 846 (West Supp. 1992), and possession of a kilogram or more of heroin with intent to distribute, 21 U.S.C.A. Sec. 841 (West Supp. 1992). He was acquitted of three substantive charges of possession with intent to distribute. He appeals his convictions and sentence. We affirm.
 
 
 2
 Five co-conspirators testified extensively for the government about Mayers's participation in a heroin importation scheme which used couriers to bring the drug from Ghana to northern Virginia. They testified that Mayers's sister and brother-in-law, Linda and Kwabena Acheampong, trained Mayers and left him in charge of their drug operation when they returned to Ghana in May 1990. Kwabena's sister, Doris Dokwa, arrived from Ghana shortly before they left and moved in with Mayers. Kwabena was arrested by Ghanaian authorities immediately after his return, but Linda continued to send couriers through the summer of 1990. The bulk of the heroin imported was sold to "Dr. Murphy," a Nigerian living in New York. Some of it was sold in Virginia through Dokwa to Elizabeth Asante, who distributed it to Ron Khan, an agent with the Drug Enforcement Administration (DEA). Khan met Mayers briefly in June 1990 when he brought Dokwa to a meeting with Asante and Khan at which a sale was negotiated. Asante and Dokwa were among the witnesses who testified against Mayers.
 
 
 3
 Witnesses "K.D." Agyei, Andrew Owusu, and Kwaeme Ampate were also involved in importing heroin by courier and selling it through the Acheampongs or Mayers. Owusu was told by Kwabena before his return to Ghana that Mayers would be taking charge of the Acheampong's operation in Virginia. The officer who arrested Mayers testified that after being advised of his Miranda[1] rights, Mayers admitted receiving heroin from couriers and selling it, and said he had tried to steal $20,000 from the Acheampongs by claiming the police had taken it from him.
 
 
 4
 Mayers testified on his own behalf that he suspected Dokwa of drug dealing but had no involvement with it. He said that Murphy was just a friend, and that numerous calls to Murphy and Asante from his phone had been made by Dokwa. He denied making incriminating statements to the arresting officer.
 
 
 5
 Mayers contends on appeal that two statements by Agyei and one by Owusu were erroneously permitted over his counsel's objection. Both Agyei and Owusu testified that they visited Kwabena Acheampong in jail in Ghana-in March 1991 and November 1990, respectively. Each said Kwabena told him that Mayers had been left in charge of the operation in Virginia when the Acheampong's returned to Ghana, and had kept money for himself which he should have returned to Ghana. Defense counsel objected to Agyei's testimony on the ground that Mayers had not yet been shown be a member of the conspiracy, and to Owusu's testimony on general hearsay grounds. On appeal, he argues that the district court failed to find that either statement was made in the course of the conspiracy or in furtherance of the conspiracy, and that both statements were thus inadmissible hearsay. Fed. R. Evid. 801(d)(2)(E).
 
 
 6
 Initially, we hold that admission of the statements tends to show that Kwabena, despite being in jail, still had influence and was trying to exert that influence to exclude Mayers from the conspiracy, and thus prevent Mayers from stealing money from the conspiracy. This is "in furtherance" of the conspiracy. Moreover, we find that any error in the admission of these statements was harmless error, because these statements were not the only evidence of Mayers's involvement in the drug operation. United States v. Davis, 657 F.2d 637, 640 (4th Cir. 1981). Asante and Dokwa also testified about it, and Owusu, who had once lived with Mayers, said Kwabena told him before returning to Ghana that Mayers would be left in charge. In addition, Mayers himself admitted it to the agents who arrested him.
 
 
 7
 Mayers also objected to testimony by Agyei that another conspirator, Kofi Kapito, told him that the reason one of Agyei's couriers never delivered a shipment of heroin was that he took it to Mayers instead. The district court admitted the statement on condition that Kapito was shown to be a member of the conspiracy, which Agyei's subsequent testimony did. Mayers maintains here that Agyei's testimony alone was insufficient to establish that Kapito was a conspirator.
 
 
 8
 Although only Agyei testified directly about Kapito's involvement, Kapito was mentioned by Mayers himself. He testified that he told the arresting officer that Kapito was one of the people he knew who were selling drugs. Also, in a recorded conversation with Asante made while she was cooperating with authorities after her arrest, Mayers said he had seen Kofi Kapito[2] and did not know whether he was still "doing things." This showing is sufficient to establish, by a preponderance of the evidence, that Kapito was a member of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987).
 
 
 9
 Mayers also alleges that the district court erred in denying his motions for a mistrial and for a new trial on the ground that government witnesses colluded in fabricating their trial testimony. At the beginning of the third day of trial, Mayers's attorney unsuccessfully moved for a mistrial, alleging that Mayers had been told by a prisoner in the lockup the day before that witnesses in his trial were comparing stories and "getting their stories straight." Mayers did not recall the witnesses to confront them with this new evidence.
 
 
 10
 After his conviction, Mayers moved for an acquittal or a new trial, alleging collusion and perjury by the government's witnesses. He submitted an affidavit from the prisoner, Steven Merkle, which stated that the witnesses were trying to agree on the amount Mayers was supposed to have concealed by pretending the police had taken it. The government opposed the motion and filed affidavits from two drug task force agents who had interviewed Agyei and Owusu separately before trial. The affidavits stated that the testimony of Owusu and Agyei was consistent with the information they provided when interviewed before being placed near each other in the lockup during Mayers's trial.
 
 
 11
 We note that Mayers did not request that the witnesses be sequestered under Federal Rule of Evidence 615. The trial record reveals that a pretrial discovery order required the government to disclose all witness statements to the defense before trial, and Mayers does not claim that any of the witnesses changed their testimony. Moreover, the testimony of Agyei, Owusu, and Dokwa all differed concerning the amount of money that Mayers had concealed. Furthermore, Mayers did not impeach the witnesses with this new evidence even though he had that opportunity. See Fed. R. Evid. 607. On these facts, we find no abuse of discretion in the district court's denial of a mistrial and its denial of a new trial.
 
 
 12
 Finally, in sentencing Mayers, the district court was not clearly erroneous in finding that he was a manager in the offense and giving him a three-level increase in offense level under guideline section 3B1.1(b).[3] There was evidence that Mayers was the contact person for numerous couriers. He met some couriers at the airport, provided them with a place to stay and a place to excrete the heroin they were carrying internally, sold the heroin to other conspirators, and returned the profits to the leaders in Ghana. This was a position of responsibility which justified the increase.
 
 
 13
 We therefore affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [2]
 Spelled "Capito" in the transcript of the conversation
 
 
 [3]
 United States Sentencing Commission, Guidelines Manual (Nov. 1991)