35 F.3d 558
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nick Berley WAYCASTER, Defendant-Appellant.
 No. 93-5891.
 United States Court of Appeals, Fourth Circuit.
 Argued July 20, 1994.
Decided Sept. 6, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Richard L. Voorhees, Chief District Judge. (CR-91-136)
 Argued: C. Gary Triggs, C. Gary Triggs, P.A., Morganton, NC, for appellant.
 Jerry Wayne Miller, Asst. U.S. Atty., Office of the U.S. Atty., Asheville, NC, for appellee.
 On brief: Mark T. Calloway, U.S. Atty., Thomas R. Ascik, Asst. U.S. Atty., Asheville, NC, for appellee.
 W.D.N.C.
 AFFIRMED.
 Before LUTTIG and WILLIAMS, Circuit Judges, and ANDERSON, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Nick Berley Waycaster was found guilty of conspiracy to manufacture and to distribute amphetamines, in violation of 21 U.S.C.A. Secs. 846 and 841(a)(1) (West 1981 & Supp.1994), and possession of phenyl-2-propanone, in violation of 21 U.S.C.A.Sec. 844 (West Supp.1994).[1] Waycaster argues that the district court committed several reversible trial errors, including (1)admitting into evidence a photograph of Waycaster and some coconspirators, (2)allowing detectives to testify regarding statements allegedly made by Waycaster, and (3)denying his Motion for Judgment of Acquittal based upon insufficient evidence. Finding no error, we affirm Waycaster's conviction.[2]
 
 I.
 
 2
 The evidence in the record demonstrates that Waycaster, along with Larry Vaughn and Colin Kelly, entered into a conspiracy to manufacture and distribute amphetamines from 1987 to 1990. Waycaster purchased the ingredients necessary to make amphetamines through his chemical company, NIC Chemical, and distributed the product; Vaughn, a chemist, produced the amphetamines. Kelly joined the conspiracy during its second year and assisted in gathering ingredients and making sales.
 
 
 3
 On February 21, 1990, agents with the North Carolina State Bureau of Investigation (SBI) located an underground laboratory during a search of Vaughn's rural residence in McDowell County, North Carolina.[3] They also discovered numerous laboratory instruments and chemicals, including a funnel, a suction flask, filter paper, sulfuric acid, ether, and glacial acetic acid. During the search, Waycaster arrived at the residence. As a result, on April 24, 1990, agents searched Waycaster's residence and uncovered a plastic bag containing phenyl-2-propanone, a Schedule II controlled substance.[4]
 
 
 4
 Waycaster's trial began on November 2, 1992. Vaughn and Kelly both cooperated with the Government and testified at trial regarding Waycaster's role in the conspiracy. The Government also presented several agents involved in the investigation, who testified regarding the makeup of the conspiracy and incriminating statements made by Waycaster concerning his role in the conspiracy. On November 5, 1992, the jury returned a guilty verdict against Waycaster on all three counts. The district court denied Waycaster's Motion for Judgment of Acquittal brought pursuant to Fed.R.Crim.P. 29.[5] After sentencing, Waycaster timely appealed.
 
 II.
 
 5
 Waycaster first contends that the district court erred in allowing into evidence a photograph taken during the time of the conspiracy showing Waycaster, Vaughn, and other coconspirators sitting together at a table in Vaughn's residence, which was the site of the underground laboratory. On the table was a batch of stimulants made from legal substances which are known as L-ephedrine hydrochloride. He asserts that, although the substance shown was not illegal and no illegal activity was depicted in the photograph, the photograph conveyed a highly prejudicial connotation of a conspiracy between Waycaster and the others in the picture, and it should have been excluded. We find no error in the admission of the picture.
 
 
 6
 "It is well-settled that decisions regarding the admission and exclusion of evidence are peculiarly within the province of the district court, not to be reversed on appeal absent an abuse of discretion." Martin v. Deiriggi, 985 F.2d 129, 137 (4th Cir.1992). Moreover, "any error in admission or exclusion [of evidence] is subject to the harmless error test: 'whether it is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances of the trial.' " United States v. Morison, 844 F.2d 1057, 1078 (4th Cir.) (quoting United States v. Davis, 657 F.2d 637, 640 (4th Cir.1981)), cert. denied, 488 U.S. 908 (1988).
 
 Fed.R.Evid. 404(b) provides as follows:
 
 7
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 8
 In ruling on the admissibility of the photograph, the district court stated as follows:
 
 
 9
 [T]he essence of [the photograph] needn't be that it's bad or illegal but ... whether or not it has ... similarities that would show ... plan or preparation or motive.
 
 
 10
 ... [I]f it's a small manufacturing operation of anything it might tend to indicate ... that there was a signature here. That it was done in a similar way with the illegal substance. That's what ... for which it would be admissible.
 
 
 11
 (J.A. at 35.) The district court did not abuse its discretion in admitting the photograph as a demonstration of Waycaster's knowledge and preparation regarding the drug process, as well as the identities of, and Waycaster's relationship with, the coconspirators. Moreover, the photograph was admitted with a limiting instruction[6] which adequately explained its narrow purpose in accordance with Rule 404(b), and we generally follow the presumption that the jury obeyed the limiting instructions of the district court. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions."); United States v. Ince, 21 F.3d 576, 584 (4th Cir.1994) ("[W]e recognize the presumption of cure by a court's instruction.").
 
 III.
 
 12
 Waycaster next contends that the district court erred in admitting into evidence several statements that Waycaster made to special agents with the SBI. Agent David Barnes testified that during the search of Waycaster's residence on April 24, 1990, Waycaster told him that the bag on his dresser contained crank that "[h]e had purchased ... to help his wife lose weight ....[a]nd he had purchased it the previous weekend at a truck stop...." (J.A. at 364-65.) Agent Ken Razza testified that, during an interview at Waycaster's office on April 26, 1990, Waycaster told him that "he had the ability to uncover [the] amphetamine distribution network in the United States," and that "he had sold chemicals that he knew to be used in the synthesis of amphetamines." (J.A. at 387.) Waycaster argues that these statements were analogous to a confession,[7] and that the Government failed to meet its burden of establishing that the statements were made voluntarily. We find that the district court did not err in admitting these statements.
 
 
 13
 The district court, out of the presence of the jury, held a hearing on the voluntariness issue and ruled that both statements were voluntary.[8] With regard to the statement Waycaster made to Agent Barnes, the court stated that "it was a voluntary statement and not custodial in the sense of depriving the Defendant of his free will." (J.A. at 363.) The district court used the same analysis with regard to Waycaster's conversation with Agent Razza, and found that statement also to be voluntary. (J.A. at 391.) The district court properly determined that Waycaster was not under arrest or in custody when the statements were voluntarily made, see 18 U.S.C. Sec. 3501(d) (Section 3501 does not "bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention"), and Waycaster has pointed to no other basis for challenging the admission of his statements.
 
 IV.
 
 14
 Finally, Waycaster contends that the district court erred in denying his Motions for Judgment of Acquittal. We must decide whether, when viewing the evidence in the light most favorable to the Government, there is substantial evidence in the record to support the jury's finding that the essential elements of the crimes charged were satisfied beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991).
 
 
 15
 Counts One and Two of the indictment alleged a conspiracy to manufacture and to distribute amphetamines, in violation of 21 U.S.C.A. Secs. 846 and 841. Two coconspirators and several agents testified regarding Waycaster's role in the conspiracy. Their testimony was corroborated by Waycaster's own incriminating statements, including his disclosure to Agent Razza that he had sold chemicals that he knew were going to be used to make amphetamines. We find that this evidence was sufficient to convict Waycaster of Counts One and Two.
 
 
 16
 Count Three of the indictment pertained to Waycaster's possession of phenyl-2-propanone, in violation of 21 U.S.C.A.Sec. 844.[9] Waycaster claims that the quantity of phenyl-2-propanone was too small to sustain his conviction. We disagree. Agent Irvin Allcox, an expert in forensic chemistry, testified that he was present at the search of Waycaster's residence, and that a plastic bag recovered from a dresser in the residence contained a "trace amount" of phenyl-2-propanone. Moreover, Agent Barnes testified that, during the search of Waycaster's residence, Waycaster told him he had purchased the substance the previous week at a truckstop to help his wife lose weight. Accordingly, since Waycaster was found to be in possession of a "measurable amount" of phenyl-2-propanone, the actual quantity is irrelevant. See, e.g., United States v. Blackston, 940 F.2d 877, 883 (3d Cir.) ("When the charge is simple possession, the quantity of the drugs is generally irrelevant (as long as the defendant is found to have possessed a 'measurable amount') ...."), cert. denied, 112 S.Ct. 611 (1991); United States v. Bernard, 757 F.2d 1439, 1443 (4th Cir.1985) ("Quantity ... is not a consideration in cases of simple possession under 21 U.S.C. Sec. 844(a)."). We find that there was sufficient evidence to sustain Waycaster's conviction on Count Three.
 
 V.
 
 17
 For the foregoing reasons, we affirm Waycaster's conviction.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Waycaster was charged in an eight-count indictment, but the other five counts, which involved money laundering, were dismissed at trial
 
 
 [2]
 Waycaster was sentenced to 188 months imprisonment on Counts One and Two, and twelve months on Count Three. He does not challenge the district court's sentencing application
 
 
 [3]
 The property was owned by Vaughn under the alias "Richard Lawrence."
 
 
 [4]
 Phenyl-2-propanone is an "immediate precursor" to the Schedule II substances amphetamine and methamphetamine. 21 C.F.R. Sec. 1308.12(g)(1) (1994). Under 21 U.S.C. Sec. 811(e) (1988), an "immediate precursor" may be placed in the same schedule as the controlled substance of which it is an immediate precursor
 
 
 [5]
 Waycaster unsuccessfully moved for Judgment of Acquittal at the close of the Government's evidence, prior to submission of the case to the jury, and after the jury verdict
 
 
 [6]
 The limiting instruction stated, in part, as follows:
 You've heard evidence ... that the Defendant did something in relation to this substance about which the witness has now testified which may be similar to the act or acts alleged or charged in this case. So if it happened at all, and that's for you to say, ... what the evidence shows as being for you to determine. You must not, in any event, consider this evidence in deciding whether the Plaintiff [sic] committed any acts which he is charged with in this case....
 However, you may consider the evidence for other limited purposes. If you find beyond a reasonable doubt from the other evidence in this case that the Plaintiff [sic] did the things that the Government contends that he did relative to the charges here then you may consider this other evidence of similar acts or acts relative to making some other substance.
 In determining whether the Defendant in this case had the state of mind or the intent necessary to perform the acts charged in this case, or whether he had the motive, or the opportunity .... [o]r whether the Defendant had a plan or acted in preparation for those things with which he is charged in this case.
 (J.A. at 151-52.)
 
 
 [7]
 "[T]he term 'confession' means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing." 18 U.S.C. Sec. 3501(e) (1988)
 
 
 [8]
 18 U.S.C. Sec. 3501(a) provides as follows:
 [A] confession ... shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.
 
 
 [9]
 21 U.S.C. Sec. 844(a) provides that it is "unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice."