UNITED STATES of America, Appellee,

v.

Roy Lee DAVIS, Appellant.

UNITED STATES of America, Appellee,

v.

Arthur Earl CARTER, Jr., Appellant.

UNITED STATES of America, Appellee,

v.

Ernest MAPLES, Jr., a/k/a
Junior, Appellant.

UNITED STATES of America, Appellee,

v.

Bernard Robert BASKERVILLE, a/k/a
Pissy, Appellant.

Nos. 80–5057, 80–5059 to 80–5061.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1981.

Decided Aug. 27, 1981.

Rehearing in No. 80–5059 Denied
Sept. 30, 1981.

Kenneth L. Thompson, Saul Kerpelman and Charles Nutt, Baltimore, Md. (George Russell, Jr., Nelson Kandel and Richard Cremin, Baltimore, Md., on brief), for appellants.

D. Christopher Ohly, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BUTZNER, PHILLIPS and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Ray Lee Davis, Arthur Earl Carter, Jr., Ernest Maples, Jr., and Bernard Robert Baskerville were convicted of conspiracy to distribute heroin between January, 1977 and June, 1979, in violation of 21 U.S.C. §§ 846 and 841(a)(1). In addition, Davis and Maples were convicted of having traveled in interstate commerce in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1952(a)(3), and Baskerville was convicted of one count, and Carter of two counts, of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). Most of the arguments raised by the defendants concern the supposed insufficiency or inherent incredibility of the government's evidence against them. Carter additionally petitions for a new trial on the further ground that testimony extrinsic to the acts charged—concerning alleged sales of heroin to 12 or 13 year old children that were made six to eleven years before the present conspiracy is alleged to have begun—was erroneously admitted into evidence.

The credible evidence clearly supports findings of guilt against Davis, Maples, and Baskerville. We readily affirm their convictions. The special point raised by Carter, however, gives greater pause.

Much of the trial was devoted to proving that the defendants conspired to distribute large quantities of heroin in the Baltimore, Maryland metropolitan area during the 2 ½ year period charged in the indictment, i.e., from January, 1977 through June of 1979. A key prosecution witness, one James Williams, about age 25 in January, 1977, testi-

fied over objection[1] that at age 12 or 13 he started to obtain heroin for resale from Carter. He stated that at that tender age he obtained as many as 800 heroin pills per week from Carter, which he sold for approximately $2.00 each, paying Carter from the receipts. Williams stated that he continued to sell for Carter "off and on" until his imprisonment in 1971 for armed robbery. Thus, the prior acts about which Williams was permitted to testify began eleven years and ended six years before the conspiracy on which the prosecution was based is alleged to have commenced. No cautionary instruction was asked or given.

■ The general rule is that the prosecution may not introduce evidence of extrinsic offenses to demonstrate the defendant's propensity to commit unlawful acts or to prove that the defendant committed the crime with which he is presently charged. *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978) (en banc).[2] However, Rule 404(b) of the Federal Rules of Evidence provides that "evidence of other . . . wrongs, or acts . . . may . . . be admissible . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[3] Even if one of these exceptions apply, if the probative value of the extrinsic acts "is outweighed by the risk that its admission will create a substantial danger of undue prejudice to the accused," *United States v. Woods*, 484 F.2d 127, 134 (4th Cir. 1973), the evidence must be excluded. *See* Fed.R.Ev. 403. "In assessing probative value, the trial court must take into consideration not only relevance but also the necessity and reliabil-

ity of the evidence." *United States v. DiZenzo*, 500 F.2d 263, 266 (4th Cir. 1974).

■ Rules 403 and 404 should have been applied by the trial court to exclude the testimony of sales by Carter so remote in time and so possessed of a propensity to prejudice. We reject the argument that the prior sales tended to prove Carter's "intent" to commit the present offenses. *See United States v. Coades*, 549 F.2d 1303, 1306 (9th Cir. 1977) (error occurred in admitting evidence of a prior conviction for bank robbery in order to establish the existence of an intent to rob); *cf. United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978). The district court erred when it allowed the testimony to be admitted.

■ The government also suggests that the Williams' testimony concerning the earlier sale of narcotics was admissible as part of "a pattern of dealings which is a course of [a] plan or scheme." However, the "pattern of dealings" exception to the general rule is generally invoked to admit evidence of contemporaneous extrinsic offenses rather than evidence of stale offenses. *See, e.g., United States v. Masters*, 622 F.2d 83, 85–88 (4th Cir. 1980) (at trial for unlawful dealing in firearms, taped conversations of negotiations where defendant bragged to undercover agents about his ability to supply practically any type of weapon was properly admitted "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place"). The government may not use evidence of misdeeds long past to prove that

---

**1.** Only Carter objected. The other defendants did not.

**2.** See Fed.R.Ev. 404(b):

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b), which became effective with most of the other Federal Rules of Evidence on July

1, 1975, "is a restatement of existing federal practice." *United States v. Masters*, 622 F.2d 83, 85 n.2 (4th Cir. 1980).

**3.** "[E]vidence of similar acts is relevant to so wide and unclassifiable a range of issues that the exclusionary rule has become one of qualified admission, aptly phrased: 'Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime.'" *United States v. DiZenzo*, 500 F.2d 263, 265 (4th Cir. 1974).

the defendant committed the crimes with which he is now charged.[4]

 Nevertheless, although the trial court erred in admitting the evidence, we are satisfied that, in the context of the case, the error was harmless. Fed.R.Crim.P. 52. The test for harmlessness for nonconstitutional error is whether it is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances of the trial. *United States v. Nyman*, 649 F.2d 208 (4th Cir. 1980). *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1948). In considering the harmlessness of the error, it is proper to consider other evidence of the defendant's guilt. *United States v. Coades, supra*, 549 F.2d at 1306 (although introduction of evidence of prior conviction for bank robbery constituted error in bank robbery prosecution, error was harmless in light of overwhelming proof of guilt); *United States v. Tibbetts*, 565 F.2d 867, 868 (4th Cir. 1977). Here the evidence supporting Carter's conviction was so conclusive that it is altogether unlikely that the error affected the verdict.

Both Williams and William Butler, a co-conspirator testifying under a favorable plea agreement, reported seeing Carter along with Davis, Maples and Baskerville, on a number of occasions cutting and repackaging large amounts of heroin for redistribution in the Baltimore area. Butler once saw Carter give Davis approximately $5,000 in return for several hundred heroin packets.[5] Two other witnesses testified that they had sold up to 100 $50 packets of heroin per week for Carter. Police undercover agent Charles Gaskins testified about three occasions in 1978 when he purchased heroin directly from Carter. On one of those occasions, Gaskins approached Carter about obtaining a quantity of pure heroin. Carter referred him to Baskerville who obtained a small quantity of the drug in exchange for $50. Thus, testimony implicating Carter was so conclusive that we do not think the error affected the judgment of the jury.

In light of the evidence, the error complained of was harmless.

AFFIRMED.

---

4. The government also indicates that it questioned Williams about his prior dealings with Carter "in anticipation of possible attempts to impeach Williams on the grounds that *he* had been dealing in drugs since the age of 12 or 13." However, such potentially prejudicial testimony should not have been brought out on direct examination solely in anticipation of an attack by the defense on Williams' credibility, which might, indeed, never come. The government was obliged to wait and see if the defense would, in fact, raise the issue of Williams' early dealing. Only then, if at all, might the government properly rebut the impeachment in its redirect examination of Williams.

5. At trial, Butler denied his earlier account to that effect given to the grand jury, but the grand jury testimony was admitted at the trial as substantive evidence.