_____

No. 94-4051
_____

United States of America,   *
     *
     Plaintiff - Appellee,  *
     * Appeal from the United States
    v.     * District Court for the
     * Eastern District of Missouri.
Ivan DeJesus Mejia-Uribe,  *
     *
     Defendant - Appellant. *


_____

Submitted:  September 12, 1995

Filed:  January 31, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON and JOHN R.
    GIBSON, Circuit Judges.
_____

JOHN R. GIBSON, Circuit Judge.


    Ivan DeJesus Mejia-Uribe appeals from his convictions for possessing cocaine with intent to distribute and conspiring to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846 (1988), and travelling in interstate commerce with intent to promote unlawful activities, 18 U.S.C. § 1952(a)(3) (1994).  The primary issue on appeal is whether the district court abused its discretion by admitting evidence of Uribe's 1978 conviction for violating 21 U.S.C. § 846.  We hold that although the district court erred in admitting the 1978 conviction because it was not reasonably related in time to the events in this case, admission of the evidence was harmless.  Uribe also argues the district court erred in refusing to require a codefendant to testify after the codefendant indicated through his attorney an intent to assert his Fifth Amendment privilege if called as a witness.  We affirm the convictions.

In late 1993, under the direction of Alfonso Ochoa, Uribe met Scott Baker and began making trips with Baker, travelling from Houston, Texas, to deliver cocaine to Michael Broom in St. Louis, Missouri. In mid-February 1994, Baker and Uribe brought approximately fifteen kilograms of cocaine to St. Louis in a rented Honda. Broom sold the cocaine and delivered the money to Uribe and Baker. About this time, government agents began intercepting the group's telephone conversations. Surveillance established that Broom, driving a Honda rented by Baker, delivered a duffle bag to the hotel where Uribe and Ochoa were staying in St. Louis. On March 8, Broom again met Ochoa and Uribe, and they switched vehicles, with Uribe taking the Honda. Uribe drove away from St. Louis but was stopped in Fredericktown, Missouri. Officers searched the vehicle and seized several bags of money, including the duffle bag that officers had seen Broom delivering to the hotel, totaling $306,702. Officers kept the money and released Uribe.

Later electronic surveillance revealed Uribe's delivery of three kilograms of cocaine to Broom at the hotel in St. Louis on March 20, 1994. On March 26, 1994, officers in St. Louis seized five kilograms of cocaine from Ochoa. Then, on April 15, 1994, officers stopped two vehicles outside Houston, Texas. Scott Baker and his son were in a pickup truck followed by a Mustang owned by Baker and driven by associates of Baker and Broom. The Mustang contained 8-1/2 kilograms of cocaine that Baker had acquired in Houston for delivery to Broom.

Broom continued to negotiate with Uribe for cocaine and was arrested on May 4, 1994. Following his arrest, he agreed to cooperate with authorities. He tape recorded several conversations with Uribe, setting up a narcotics transaction. On May 10, 1994, Broom and an undercover detective traveled to Houston, Texas, where they met Uribe at a hotel. They showed Uribe several hundred

thousand dollars in flash money, and he agreed to return the following morning with fifteen kilograms of cocaine. Officers arrested Uribe as he left the hotel.

At Uribe's trial, Baker[1] testified against Uribe and described many of the events set forth above. In addition, the government introduced into evidence a certified copy of the judgment and commitment order, dated October 3, 1978, entered following Uribe's guilty plea to conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. The 1978 transactions involved preliminary negotiations by another person concerning the distribution of cocaine, Uribe's participation with that person in final negotiations, and the delivery by both of 979.7 grams of cocaine to undercover agents on July 6, 1978. The district court denied Uribe's motion to exclude the 1978 conviction, admitting the evidence under Federal Rule of Evidence 404(b). Uribe was convicted and now appeals.

**I.**

Uribe argues introduction of his 1978 conviction into evidence violated Rule 404(b).[2] He contends the 1978 conviction was too remote in time, and the prejudicial effect of admitting the conviction outweighed its probative value. We review the admission of other crimes evidence for abuse of discretion. United States v. Smith, 49 F.3d 475, 478 (8th Cir. 1995) (citing United States v. Has No Horse, 11 F.3d 104, 106 (8th Cir. 1993)).

----

[1]See United States v. Baker, 64 F.3d 439 (8th Cir. 1995).

[2]Fed. R. Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

> [O]ther crimes evidence is admissible if it is: "`(1) relevant to a material issue; (2) of crimes similar in kind and reasonably close in time to the crime charged; (3) sufficient to support a jury finding that the defendant committed the other crimes; and (4) more probative than prejudicial.'" United States v. Sykes, 977 F.2d 1242, 1246 (8th Cir. 1992) (quoting United States v. Yerks, 918 F.2d 1371, 1373 (8th Cir. 1990)). Other crimes evidence, however, is not admissible if it tends to prove only the defendant's criminal disposition. Sykes, 977 F.2d at 1246.

Id.

Under this test, admissibility of other crimes evidence depends on the nature and purpose of the evidence. See United States v. Spillone, 879 F.2d 514, 519 (9th Cir. 1989), cert. denied, 498 U.S. 878 (1990). "Questions about `how long is too long' do not have uniform answers; the answers depend on the theory that makes the evidence admissible." Id. (quoting United States v. Beasley, 809 F.2d 1273, 1277 (7th Cir. 1987)). "[T]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case."[3] United States v. Engleman, 648 F.2d 473, 479 (8th Cir. 1981).

---

[3]Based on the facts of the individual cases, courts have allowed evidence of past crimes with varying degrees of remoteness to be introduced against defendants. See, e.g., Spillone, 879 F.2d at 519 (collecting cases); but see United States v. Davis, 657 F.2d 637, 639 (4th Cir. 1981) (not allowing evidence of prior drug transactions offered to show intent).

In Spillone, 879 F.2d at 518-19, the district court allowed admission of a conviction that was more than ten years old. The Ninth Circuit held that the conviction was not too remote, considering the similarity of the prior conviction to the charged offense. Id. at 519. In view of the facts surrounding the case, the probative value of the evidence was sufficient to overcome the prejudicial effect, and the prejudicial effect was cushioned by the limiting instruction given by the district court. Id. at 519-20.

-4-

In _Engleman_, 648 F.2d at 476-77, the defendant and his assistant formed an elaborate conspiracy to collect the proceeds of a life insurance policy. Engleman instructed his assistant to marry the victim, take out a life insurance policy on the victim, and then Engleman would kill the victim. _Id._ at 477. The assistant testified that Engleman told her that he knew the plan would work because he had killed a business associate in 1963 and split the insurance proceeds with the widow. _Id._ at 478. The trial court also allowed testimony about the 1963 killing and the payment of insurance following the death. _Id._ at 477.

We concluded that the district court did not abuse its discretion in admitting the evidence about the 1963 killing, rejecting the argument that thirteen years was too remote. _Id._ at 479. Considering the intricate facts of the plan and the nearly identical crimes, we held the evidence about the 1963 murder was not cumulative of other evidence proving intent. _Id._

We decline to extend our holding regarding the remoteness of the thirteen-year-old crime in _Engleman_ beyond the facts of that case. The inquiry regarding the remoteness of a prior conviction is fact specific. The two crimes in _Engleman_ were very unique, involving a common scheme.

Here, although both crimes involved the distribution of cocaine, the 1978 conviction involved a single sale of cocaine to undercover agents. In contrast, this case involved a large scale, ongoing operation that Uribe entered under Ochoa's direction. Uribe's crimes are not as similar in kind as the crimes in _Engleman_, and they are even more remote in time. _See_ _Smith_, 49 F.3d at 478. Thus, the 1978 conviction was not similar in kind or reasonably close in time to the instant charges. _Id._

-5-

Further, the 1978 conviction was more prejudicial than probative.[4] <u>Smith</u>, 49 F.3d at 478. The government introduced the 1978 conviction to establish knowledge and intent. However, the government also introduced substantial evidence of Uribe's participation in the drug conspiracy. Several FBI agents testified about Uribe's drug trafficking activities. Baker and Bloom, both coconspirators, testified about the nature of the conspiracy and Uribe's part in it. Thus, the jury received overwhelming, highly probative evidence of Uribe's knowledge and intent, as it related to this crime. The significance of the 1978 conviction pales in comparison with the other evidence produced by the government to show knowledge and intent, and its introduction was more prejudicial than probative.

Introduction of the 1978 conviction offered little, if any, probative value beyond the tendency to show that Uribe was the type of person with a propensity to commit this type of crime. Rule 404(b) prohibits the district court from admitting this type of other crimes evidence. Thus, we hold that the district court abused its discretion in allowing introduction of the 1978 conviction. <u>See</u> <u>Has No Horse</u>, 11 F.3d at 106 (reversing conviction because introduction of other crimes evidence tended only "to show a propensity to commit such acts"); <u>Davis</u>, 657 F.2d at 639.[5]

---

[4]As a general matter, the balancing of probative value against the prejudicial impact of a particular item of evidence rests primarily within the discretion of the district court. <u>United States v. Escobar</u>, 50 F.3d 1414, 1421 (8th Cir. 1995) (citing <u>United States v. O'Connell</u>, 841 F.2d 1408, 1423 (8th Cir. 1988), <u>cert. denied</u>, 488 U.S. 1011 (1989)).

[5]The district court in <u>Davis</u>, 657 F.2d at 639, allowed testimony regarding previous drug transactions involving the defendant, beginning eleven years before and ending six years before the charged crime. In reviewing the district court's ruling, the Fourth Circuit stated: "Rules 403 and 404 should have been applied by the trial court to exclude the testimony of sales . . . so remote in time and so possessed of a propensity to prejudice. We reject the argument that the prior sales tended to prove . . . `intent' to commit the present offenses." <u>Id.</u>

However, the government's case against Uribe was overwhelming. United States v. Nichols, 808 F.2d 660, 663 (8th Cir.), cert. denied, 481 U.S. 1038 (1987). The 1978 conviction was cumulative of other evidence establishing Uribe's knowledge and intent to participate in the conspiracy. Therefore, introduction of the 1978 conviction did not have "substantial and injurious effect or influence in determining the jury's verdict." United States v. Mihm, 13 F.3d 1200, 1205 (8th Cir. 1994) (citations omitted). Thus, introduction of the 1978 conviction into evidence was harmless error. See Smith, 49 F.3d at 478; Nichols, 808 F.2d at 663.

## II.

Uribe argues that the district court violated his constitutional right to confront witnesses by not requiring codefendant Ochoa to testify at trial. Uribe served Ochoa with a writ of habeas corpus ad testificandum in an attempt to compel Ochoa to testify. Ochoa's attorney stated on the record that if called Ochoa would assert his Fifth Amendment privilege against self incrimination. Uribe contends that Ochoa waived his Fifth Amendment privilege by pleading guilty to charges arising from the conspiracy. The government responds that, although Ochoa pleaded guilty to federal charges in the Eastern District of Missouri, Ochoa's plea had no impact on other potential charges, and at the time of Uribe's trial, two counts of Ochoa's indictment had not been dismissed.

The right to compulsory process is not absolute. Wright v. Lockhart, 914 F.2d 1093, 1097 (8th Cir. 1990), cert. denied, 498 U.S. 1126 (1991). Before a defendant is entitled to compulsory

---

However, because of the conclusive evidence supporting conviction, the court found the error in admitting the evidence harmless. Id. at 640.

process, the defendant must show that the testimony of the witness is both material and favorable to the defense.  Id. (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982)).

Uribe offered no explanation, at trial or on appeal, of how Ochoa's proposed testimony was material or favorable to his defense.  Without such a showing, the district court was not required to consider whether Ochoa had waived his Fifth Amendment privilege, and it was not required to compel Ochoa to testify.

Further, by pleading guilty to federal charges in Missouri, Ochoa did not waive his Fifth Amendment privilege as it related to other charges.  See United States v. Roberts, 503 F.2d 598, 600 (9th Cir. 1974), cert. denied, 419 U.S. 1113 (1975).  Uribe's Sixth Amendment "right to compulsory process does not include the right to compel a witness to waive his or her Fifth Amendment privilege against self incrimination."  United States v. Robaina, 39 F.3d 858, 862 (8th Cir. 1994) (addressing compulsory process and immunity issues); accord United States v. Carr, 67 F.3d 171, 176 (8th Cir. 1995) (upholding district court's refusal of defendant's request to require witness asserting Fifth Amendment privilege to testify).  See also Roberts, 503 F.2d at 600 (holding that a defendant may not call a codefendant who has indicated he will assert his privilege against self incrimination, when the codefendant has pleaded guilty but still faces other undismissed charges).

We affirm Uribe's conviction.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.