# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2325

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Minnesota. |
| Nabil Hamadeh Abumayyaleh, | * | |
| also known as Nabel Mahmoud | * | |
| Hamadeh, also known as | * | |
| Billy Abumayyaleh, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 13, 2008
Filed: July 1, 2008

_____

Before RILEY, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Nabil Hamadeh Abumayyaleh (Abumayyaleh) was found guilty by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Abumayyaleh to 100 months in prison. Abumayyaleh appeals his conviction and sentence. For the reasons stated below, we affirm Abumayyaleh's conviction and reverse his sentence.

## I.   BACKGROUND

Abumayyaleh became the object of an investigation while managing Crystal Foods, a family owned convenience store. During the initial stages of the investigation in 2004, a government informant told Abumayyaleh the informant had a friend with firearms for sale. In response, Abumayyaleh stated he was not interested in the firearms, but he was interested in buying stolen video game systems.

In 2005, an undercover officer began meeting and speaking with Abumayyaleh. During this time, the undercover officer sold purportedly stolen items, such as a plasma TV, video games, video game systems, and computers, to Abumayyaleh. Over the course of the investigation, Abumayyaleh bought over $7,000 of purportedly stolen merchandise from the undercover officer.

The topic of weapons eventually came up in the meetings, and Abumayyaleh stated he had weapons all around him. On another occasion, Abumayyaleh stated he was "locked and loaded." As a result, the government shifted its investigation to determine if Abumayyaleh was interested in purchasing purportedly stolen firearms. To gauge Abumayyaleh's interest, the government set up a "flash" of firearms on October 12, 2005, in which several guns were shown to Abumayyaleh, but he was informed he was not permitted to purchase them. Abumayyaleh was clearly irritated at his inability to buy the firearms.

During one conversation between the undercover officer and Abumayyaleh, the officer stated he was going to Chicago to pick up his "thang" or his "strap," meaning his firearm. To this, Abumayyaleh replied, "[y]ou never bring me back none."

On November 28, 2005, Abumayyaleh was finally given the opportunity to buy purportedly stolen firearms from the undercover officer. At the sale, Abumayyaleh purchased a Colt .45 and a video game system. Abumayyaleh placed the Colt .45 in

the office of the store. Abumayyaleh indicated his interest in an H&K assault rifle offered for sale, but declined to purchase it because he did not have enough money.

Abumayyaleh was arrested and the officers executed a search warrant on the convenience store. During the search, four firearms, including the Colt .45 caliber handgun purchased from the officer, were recovered from the same office area, where Abumayyaleh retreated twice during the sale on November 28. The Colt .45 caliber handgun was found in a red bin approximately four to five feet from the desk. A loaded .380 caliber handgun was found in a stack of boxes to the left of the desk. A Smith and Wesson .38 caliber handgun was found in the top left drawer of the desk, and a .22 caliber handgun was found between papers in the left desk drawer. Multiple rounds of ammunition were found throughout the office. In addition, officers found a soft-sided carrying case for a handgun, containing two magazines and ammunition. Some of Abumayyaleh's personal documents were found in the same desk as the firearms. Other members of Abumayyaleh's family had access to this office in the store.

On July 14, 2006, a jury convicted Abumayyaleh of being a felon in possession of a firearm, identifying all four weapons discovered in the office, in violation of 18 U.S.C. § 922(g)(1). After calculating a base offense level of 20, the district court enhanced Abumayyaleh's sentence by eight levels, resulting in a guidelines range of 130 to 162 months, with a statutory maximum sentence of 120 months. The district court sentenced Abumayyaleh to 100 months imprisonment.

Abumayyaleh appeals (1) the district court's denial of his motion for judgment as a matter of law, arguing entrapment; (2) the sufficiency of the evidence to support his conviction; (3) the denial of his motion to suppress evidence obtained in a search of his place of business; (4) the district court's admission of prior convictions; and (5) the base offense level calculated by the district court and the application of enhancements. We affirm Abumayyaleh's conviction and reverse his sentence.

## II.    DISCUSSION

### A.    Motion for Judgment of Acquittal

Abumayyaleh appeals the district court's denial of his motion for judgment of acquittal, claiming he was entrapped as a matter of law.  Abumayyaleh argues he was induced and did not have the predisposition to violate the law by obtaining and possessing a firearm.  Abumayyaleh contends the undercover officer focused on him and caused him to purchase a firearm in violation of the law by implanting the criminal design in his mind.

We review de novo the district court's denial of Abumayyaleh's motion for judgment of acquittal.  See United States v. Hilliard, 490 F.3d 635, 640 (8th Cir. 2007) (citation omitted).  "In reviewing a district court's denial of a motion for acquittal based on the defense of entrapment, we view the evidence in the light most favorable to the government."  United States v. Crump, 934 F.2d 947, 956 (8th Cir. 1991) (citation omitted).  "Entrapment is an affirmative defense, and the question of entrapment is generally for the jury."  Id. (citation omitted).  The defense of entrapment has two elements (1) government inducement of the crime, and (2) the defendant's lack of predisposition to engage in the criminal conduct.  See United States v. Stanton, 973 F.2d 608, 609-10 (8th Cir. 1992) (citation omitted).  "'The defendant carries the initial burden of presenting some evidence that he or she was induced by government agents to commit the offense.'"  United States v. Van Slyke, 976 F.2d 1159, 1162 (8th Cir. 1992) (quoting United States v. McGuire, 808 F.2d 694, 696 (8th Cir. 1987) (per curiam)).

Government inducement is "conduct that creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense." Stanton, 973 F.2d at 610 (citation and internal quotation marks omitted). "[F]riendship with [a] confidential informant is not evidence of entrapment." United States v. Ford, 918 F.2d 1343, 1349 (8th Cir. 1990).  "Inducement cannot be shown

if government agents merely provide the opportunity or facilities to commit the crime or use artifice and stratagem." Stanton, 973 F.2d at 610 (citations omitted).

The government conduct in this case did not rise to the level of inducement. Abumayyaleh was simply given the opportunity to purchase the firearm after becoming acquainted with the undercover officer. Abumayyaleh does not contend the government threatened, cajoled, coerced, harassed, promised rewards, or pleaded with him to purchase the firearm. Abumayyaleh claims the government informant used his friendship as leverage. However, Abumayyaleh cites no conduct that would rise to the level of inducement.

Abumayyaleh relies on Sherman v. United States, 356 U.S. 369, 373 (1958), where the Supreme Court held the defendant was entrapped as a matter of law when a fellow recovering addict pleaded with him to procure drugs to which both of them were addicted. Sherman does not control the outcome in this case because Abumayyaleh's purchase of the Colt .45 was not in response to the pleadings of a friend. Though Abumayyaleh claims the undercover officer had established a friendship with him, it reasonably appears the relationship was primarily a business relationship. Regardless of the nature of the relationship, at no time did the undercover officer plead with Abumayyaleh to purchase any firearm. At one point in time, Abumayyaleh was informed he was not permitted to purchase firearms shown to him. Abumayyaleh's response was one of irritation, showing his desire (or predisposition) to purchase a firearm.

The district court correctly denied Abumayyaleh's motion for judgment as a matter of law because the government did not induce Abumayyaleh to buy the firearm. Because we find Abumayyaleh did not show inducement, we need not address whether he had the predisposition to commit the crime. See United States v. Loftus, 992 F.2d 793, 798 (8th Cir. 1993) (noting the prosecution is not required to prove predisposition when the defendant has not shown inducement).

-5-

## B. Sufficiency of the Evidence

Abumayyaleh argues the government presented insufficient evidence he possessed the firearms found in the office because other members of his family had access to the office. "[S]ufficiency of the evidence [is reviewed] de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007) (citation and internal quotation marks omitted). "[W]e may reverse only if we find that no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (citation and internal quotation marks omitted).

To convict Abumayyaleh, "the government was required to prove beyond a reasonable doubt . . .: (1) [Abumayyaleh] previously had been convicted of a crime punishable by a term of imprisonment exceeding one year, (2) [Abumayyaleh] knowingly possessed a firearm and ammunition, and (3) the firearm and ammunition had been in or had affected interstate commerce." Id. (citation omitted). The only contested issue in this case is the second element.

"Knowing possession can be actual or constructive, as well as sole or joint." Id. (citation omitted). Constructive possession is established if the defendant "had control over the place where the firearm was located, or control, ownership, or dominion over the firearm itself." Id. (citation omitted). Simple "knowledge of presence combined with dominion over the premises in which the contraband is concealed will amount to constructive possession." United States v. Urick, 431 F.3d 300, 303 (8th Cir. 2005) (citation and internal quotation marks omitted). See United States v. Smart, 501 F.3d 862, 865-67 (8th Cir. 2007). Finally, "'the presence of one possible innocent explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt.'" Piwowar, 492 F.3d at 956 (quoting United States v. Maloney, 466 F.3d 663, 667 (8th Cir. 2006)) (internal quotation marks omitted) .

The location of the firearms in the office and Abumayyaleh's control over the area were sufficient grounds to establish Abumayyaleh possessed the firearms, regardless of whether other people had access to the office. In conversations with the undercover officer, Abumayyaleh referenced he had weapons all around him, and once Abumayyaleh declared he was "locked and loaded." The government presented the jury with sufficient evidence to convict Abumayyaleh.

### C. Motion to Suppress

Abumayyaleh challenges the district court's denial of his motion to suppress evidence obtained from the search of Crystal Foods, on three grounds: (1) there was no probable cause to issue the search warrant, (2) the Leon[1] good faith exception does not apply, and (3) the seizure of the firearms in the office was beyond the scope of the search warrant and not justified by the plain view doctrine. "We review the district court's findings of fact for clear error" and review "Fourth Amendment seizures de novo." United States v. Blom, 242 F.3d 799, 807 (8th Cir. 2001) (citation omitted).

### 1. Probable Cause and Good Faith

Abumayyaleh argues there was no probable cause to support the search warrant because the items listed in the affidavit were not actually stolen.[2] Attempted receipt of stolen property is a felony in the state of Minnesota, for which impossibility is not a valid defense. See State v. Bird, 285 N.W.2d 481, 482 (Minn. 1979) (holding "the defense of legal impossibility does not bar . . . prosecution for either attempt or conspiracy");[3] see also Minn. Stat. § 609.17, subd. 2 ("An act may be an attempt

---

[1]United States v. Leon, 468 U.S. 897 (1984).

[2]The Minnesota state search warrant was directed solely toward the purported stolen goods Abumayyaleh purchased.

[3]Abumayyaleh relies heavily on United States v. Pinque, 234 F.3d 374, 378 (8th Cir. 2000); United States v. Rios, 171 F.3d 565, 566 (8th Cir. 1999); and United States v. Nelson, 165 F.3d 1180, 1184 (8th Cir. 1999), arguing the holding in Bird "appears

notwithstanding the circumstances under which it was performed or the means employed to commit the crime intended or the act itself were such that the commission of the crime was not possible, unless such impossibility would have been clearly evident to a person of normal understanding."). Because impossibility is not a valid defense, it is of no consequence the affidavit submitted in obtaining the warrant indicated the items sold to Abumayyaleh were not actually stolen. Finally, we need not address whether the Leon good-faith exception applies because the warrant was supported by probable cause.[4]

### 2.    Plain View

Next, Abumayyaleh claims the search warrant was obtained and executed in bad faith, arguing: (1) the search warrant was a pretext to look for firearms, and (2) the officers waited for Abumayyaleh to purchase a firearm before executing the warrant, thus the police should not be able to use the plain view doctrine.[5]

The plain view doctrine "allows a police officer to seize evidence without a warrant when (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to

---

inconsistent with the well-established rule that 'there can be no indictable conspiracy involving only the defendant and government agents and informers.'" (quoting Rios, 171 F.3d at 566). Abumayyaleh's reliance is misplaced because, regardless of the questionable pedigree of the quote taken from Rios, these are federal cases and they dealt with conspiracy, not a Minnesota charge of attempted receipt of stolen property.

[4]We also find no support for Abumayyaleh's conclusory assertion the judge "abandoned his judicial role."

[5]Abumayyaleh provides no caselaw to support his second contention, other than cases predating Horton v. California, 496 U.S. 128 (1990). None of these cases dealt with the delayed use of a search warrant. Therefore, we need not address this unsupported argument.

the object itself." United States v. Hughes, 940 F.2d 1125, 1126 -27 (8th Cir. 1991) (quoting Horton v. California, 496 U.S. 128, 138-40 (1990)) (internal quotation marks omitted). The discovery of evidence under the plain view doctrine need not be inadvertent. Id. at 1127; see also Horton, 496 U.S. at 139-40. If an officer has a valid warrant for one item and only a suspicion that another is in the same place, the discovery of the second item is not invalidated if it is found in plain view while looking for the first item. See id. at 139.

The six day delay in execution until after Abumayyaleh had purchased the Colt .45 from the undercover officer does not prove the government executed the search warrant in bad faith. In fact, the detective who obtained the search warrant testified, although the warrant was obtained on November 22, it was not executed until six days later because during the Thanksgiving weekend there were not enough officers to execute the search warrant safely and properly.

Whether officers suspected Abumayyaleh had other weapons and whether they waited to execute the warrant until he bought a firearm from the informant does not affect the reasonableness and constitutionality of the search warrant.[6] The district court properly denied Abumayyaleh's motion to suppress, because probable cause supported the warrant and the plain view doctrine applies.

---

[6]Abumayyaleh does not argue the officers were not where they were authorized to be or the firearms seized were not readily apparent as being illegal for purposes of the plain view doctrine. The government concedes the warrant did not authorize them to search for or seize any firearms. The warrant allowed the officers to search the office for the purportedly stolen goods sold to Abumayyaleh, thus the officers were allowed to be in the office and were permitted to look in places where the purportedly stolen items might be concealed.

**D.     Prior Convictions**

Abumayyaleh next appeals the district court's denial of his motion for judgment of acquittal, or in the alternative, a new trial. Abumayyaleh argues the district court denied him a fair trial by admitting his prior convictions under Federal Rules of Evidence 403 and 404(b), even though Abumayyaleh's firearm conviction tends to show a predisposition to possess a firearm when legally prohibited from doing so. A district court's evidentiary rulings are reviewed for abuse of discretion. See United States v. Mejia-Uribe, 75 F.3d 395, 397 (8th Cir. 1996) (citation omitted).

Federal Rule of Evidence 403 allows a court to deny the admission of relevant evidence when the probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Federal Rule of Evidence 404(b) allows "admission of evidence of other crimes, wrongs, or acts to show proof of motive, intent, or preparation if, among other reasons, the evidence is of bad acts similar and not overly remote in time to the crime committed." United States v. Coleman, 284 F.3d 892, 894 (8th Cir. 2002) (citation and internal quotation marks omitted). "Other crimes evidence is admissible if it is: (1) relevant to a material issue; (2) of crimes similar in kind and reasonably close in time to the crime charged; (3) sufficient to support a jury finding that the defendant committed the other crimes; and (4) more probative than prejudicial." Mejia-Uribe, 75 F.3d at 397-98 (citation and internal quotation marks omitted). "Under this test, admissibility of other crimes evidence depends on the nature and purpose of the evidence." Id. at 398 (citation omitted). In United States v. Engelman, 648 F.2d 473, 479 (8th Cir. 1981), we allowed the admission of a thirteen-year-old conviction because of its factual similarity to the crime charged. "[T]here is no absolute rule regarding the number of years that can separate offenses." Id. We apply a "reasonableness standard and examine the facts and circumstances of each case." Id. (citations omitted).

Evidence of prior bad acts "is admissible to show a defendant's predisposition once the defendant has asserted the entrapment defense." Crump, 934 F.2d at 954

(citations omitted). The government used the prior convictions to prove predisposition in response to Abumayyaleh's assertion of entrapment as a defense and the prior convictions were sufficiently similar factually to the case at bar. In the 1993 conviction, Abumayyaleh received a stolen firearm. In the 1995 conviction, Abumayyaleh possessed a firearm as a felon and removed the identification numbers. The district court did not abuse its discretion in admitting the prior convictions because of their high probative value and the necessity to prove predisposition.

### E.     Sentencing

Finally, Abumayyaleh requests remand of this case due to errors in the calculation of his base offense level and application of several sentencing enhancements. We reverse Abumayyaleh's sentence on one ground.[7]

"We review a district court's factual findings for clear error and its interpretation and application of the advisory sentencing guidelines de novo." United States v. Wells, 469 F.3d 716, 720 (8th Cir. 2006) (citation omitted). "When construing the Guidelines, we look first to the plain language, and where that is unambiguous we need look no further." United States v. Nevarez-Espino, 471 F.3d 926, 927 (8th Cir. 2006) (citation and internal quotation marks omitted).

At sentencing, the district court applied United States Sentencing Guidelines § 2K2.1(b)(4), which allows the sentencing judge to increase the base offense level by two levels "[i]f any firearm . . . was stolen . . . ." U.S.S.G. § 2K2.1(b)(4).[8] Under the plain language of this guideline, the two-level sentencing enhancement applies

---

[7]Having reviewed Abumayyaleh's other sentencing issues, based on the facts of the case and our prior precedent, we find no merit to his contentions.

[8]Abumayyaleh was sentenced pursuant to the 2006 version of the manual. All references to the Sentencing Guidelines thus refer to the 2006 edition.

only if the firearm "*was* stolen." § 2K2.1(b)(4) (emphasis added).[9] We recognize this creates a situation in which the enhancement does not apply even if the offender intended to purchase stolen firearms, so long as the firearm involved in the sting operation was not actually stolen. Nonetheless, we are bound by the plain text of the guidelines. The district court erred in applying the enhancement given the facts of Abumayyaleh's case, and resentencing is necessary.

## III.   CONCLUSION

For the foregoing reasons, Abumayyaleh's conviction is affirmed and his sentence is reversed and remanded for resentencing in accordance with this opinion.

_____

_____

[9]Section 2K2.1(b)(4) applies whether or not Abumayyaleh knew or had reason to believe the firearm was stolen.  <u>See</u> <u>Smart</u>, 501 F.3d at 866-67.