# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3326

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Stephen Henderson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 16, 2010
Filed: July 30, 2010

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Stephen Anthony Henderson of conspiring to distribute, and possessing with the intent to distribute, in excess of five kilograms of cocaine, and distributing over five kilograms of cocaine, in violation of U.S.C. §§ 841(a)(1), 846, and 851(a). The district court[1] sentenced him to life imprisonment. He appeals, arguing that the district court erred in (1) denying his motion to suppress evidence and statements, (2) admitting evidence of prior convictions and bad acts, (3) limiting defense questioning at trial, (4) sentencing under 21 U.S.C. § 841 without properly

_____

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

following 21 U.S.C. § 851, and (5) refusing to allow his previous counsel to testify. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court affirms.

## I.

On March 5, 2008, Henderson delivered 10 kilograms of cocaine to a confidential informant. Drug Enforcement Agency (DEA) agents witnessed Henderson retrieve a black bag containing cocaine from a house on Bon Jour Court. He and the informant then drove to another residence. Violating the agents' instructions, the informant took the bag inside the house as Henderson left. The informant then met the investigators and gave them the bag, containing five kilograms of cocaine. The next day, the informant admitted he placed in the house an additional five kilograms, which the agents retrieved.

On March 10, 2008, based on this drug sale and other recorded conversations, agents arrested Henderson at an apartment on Seiloff Drive, without a warrant. He consented to a search of the apartment, directing agents to a closet with a duffel bag containing $256,575. They also conducted a warranted search of the Bon Jour house, finding a drug ledger and $948,080.

Later that day, at the DEA office, he told the agents, "This is much bigger than you guys think." He named six drug customers who owed him money. Henderson cooperated in the investigation by wearing a recorder while retrieving a money counter from his supplier, "the biggest dope dealer in St. Louis."

The next day, he and two agents met with his then-attorney, who claimed that one agent asked if he "could live with" a sentence of "a year or so." The agent denied making this statement. Pre-trial, the district court excluded the attorney's testimony. The court also denied Henderson's motion to suppress evidence and statements obtained after his arrest.

The government filed an information listing his two prior convictions, requiring a life sentence. At trial, the informant and another witness testified that the drug

conspiracy began in 2007. The Government sought to introduce evidence of a 1993 felony conviction. The district court instructed the jury on the 1993 conviction for selling cocaine and (initially) on a 1989 felony conviction for possessing cocaine. The court immediately corrected the instruction, stating, "Oops. Let me say this, it was only one conviction, and that conviction was for the sale of cocaine, not the other [one for possession]. So I'll start again, and so keep that in mind." The court also restricted the Government's questioning about Henderson's failure to file income taxes but did not instruct the jury to disregard the testimony.

At sentencing, Henderson received the statutory minimum of life imprisonment based on two prior felony convictions.

II.

A.

Henderson first argues that the district court erred in denying his motion to suppress evidence and his statements because the DEA agents lacked probable cause to arrest him. Usually, "the denial of a pretrial motion to suppress evidence preserves the objection for appeal." *United States v. Johnson*, 906 F.2d 1285, 1290 (8th Cir. 1990). But "this court has found pretrial objections waived when an appellant's counsel affirmatively stated 'no objection' at trial to the admission of evidence previously sought to be suppressed." *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001).

He seeks to suppress only evidence and statements obtained at the Seiloff apartment. At trial, his counsel stated "no" when asked for "any objection" to admitting the physical evidence. Counsel later waived objection to admitting the $256,575 seized from the apartment. Henderson thus "consciously and intentionally waived any objection to the district court's receipt of the evidence at issue in his pretrial suppression motion." *United States v. Comstock*, 531 F.3d 667, 675 (8th Cir. 2008) (internal quotation omitted) (defendant waived motion to suppress when "each

time the Government moved to admit evidence, defense counsel stated 'no objection'").

Henderson did preserve his motion to suppress the statements. But his motion fails when reviewing the "district court's factual findings for clear error and its legal conclusions de novo." *See United States v. Williams*, 431 F.3d 1115, 1117 (8th Cir. 2005). "Because this case proceeded to trial, we examine the entire record, not merely the evidence adduced at the suppression hearing." *United States v. Inman*, 558 F.3d 742, 745 (8th Cir. 2009).

He claims that an intervening exculpatory act destroyed probable cause for his arrest. *See United States v. Watson*, 423 U.S. 411, 449 (1976) (Marshall, J., dissenting) (noting that "probable cause to arrest, once formed, will continue to exist for the indefinite future, at least if no intervening exculpatory facts come to light"); *Wong Sun v. United States*, 371 U.S. 471, 484–88 (1963) (explaining that if the police gain information that destroys probable cause, then statements made as a result of that information cannot be admitted). "Probable cause exists when, at the time of the arrest, the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." *United States v. Martinez*, 462 F.3d 903, 908 (8th Cir. 2006); *see United States v. Quiroga*, 554 F.3d 1150, 1154 (8th Cir. 2009). "[B]ecause the *totality* of circumstances determines the existence of probable cause, evidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer has probable cause." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (emphasis in original) (probable cause was destroyed when an officer ignored exculpatory evidence that the suspect was really the victim in the altercation, and refused to interview a witness who could corroborate the suspect's statement).

Henderson conjectures that when the informant disobeyed instructions by entering the house, he could have placed five kilograms of cocaine in the bag himself. The next day, Henderson continues, he delivered the additional five kilograms stored

in the basement because he wanted to ensure Henderson received life imprisonment. This intervening act, he asserts, destroyed probable cause.

Law enforcement officers have "substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997). DEA agents witnessed what they reasonably believed was a drug transaction and possessed recorded conversations about Henderson's dealings. These circumstances were sufficient to arrest Henderson. *See United States v. Brown*, 49 F.3d 1346, 1349–50 (8th Cir. 1995) (probable cause existed where officers witnessed what an informant claimed was a drug transaction). Following his arrest, Henderson waived his *Miranda* rights and consented to a search of the Seiloff apartment. No intervening exculpatory act destroyed probable cause. The district court properly concluded that his statements were not subject to the exclusionary rule.

He also asserts that his statements should have been suppressed because he was not presented to a neutral, independent magistrate to determine probable cause for his arrest. But he raises this argument for the first time on appeal. "Federal Rule of Criminal Procedure 12(b)(3)(C) and (e) provides that motions to suppress evidence must be raised before trial or are waived, and the waiver provision applies not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion." *United States v. Spotted Elk*, 548 F.3d 641, 656 (8th Cir. 2008) (internal quotation omitted); *see* **Fed. R. Crim. P. 12(e)** ("A party waives any Rule 12(b)(3) [motion to suppress] defense . . . not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides."). By not raising this suppression argument below, Henderson waived the claim, rendering it "unreviewable on appeal." *United States v. Booker*, 576 F.3d 506, 511 (8th Cir. 2009).

B.

Henderson next argues that the district court should have excluded evidence of the 1993 conviction for selling cocaine. This court reviews "a district court's decision to admit evidence under Federal Rule of Evidence 404(b) for abuse of discretion and

reverse[s] only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Thomas*, 593 F.3d 752, 757 (8th Cir. 2010) (internal quotation omitted). District courts can admit 404(b) evidence of a prior conviction in order to prove intent or knowledge. *United States v. Trogdon*, 575 F.3d 762, 766 (8th Cir. 2009). The prior conviction must be "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect." *United States v. Williams*, 534 F.3d 980, 984 (8th Cir. 2008).

According to Henderson, his 1993 conviction was too remote and more prejudicial than probative. "The inquiry regarding the remoteness of a prior conviction is fact specific" and based on a reasonableness standard. *United States v. Mejia-Uribe*, 75 F.3d 395, 398 (8th Cir. 1996); *United States v. Abumayyaleh*, 530 F.3d 641, 650 (8th Cir. 2008). "There is no absolute rule regarding the number of years that can separate offenses." *Thomas*, 593 F.3d at 758. This court need not decide, however, whether the 1993 conviction was too remote because the conviction was more prejudicial than probative, and the test for 404(b) admissibility is conjunctive.

If the government already has significant evidence of drug transactions, admitting a prior conviction may be more prejudicial than probative. *Compare Mejia-Uribe*, 75 F.3d at 398–99 (prior conviction for a single sale of cocaine was inadmissible where the present conviction involved "a large-scale, ongoing operation") *and United States v. Carroll*, 207 F.3d 465, 469 (8th Cir. 2000) (prior robbery conviction was "too generic and remote" to be admissible), *with United States v. James*, 564 F.3d 960, 962–63 (8th Cir. 2009) (prior conviction for a similar drug offense was admissible where "knowledge and intent were relevant issues" because defendant's "mere presence defense" placed his state of mind in question) *and United States v. Washington*, 318 F.3d 845, 859 (8th Cir. 2003) ("Evidence of other drug transactions is relevant to demonstrate that the defendant knowingly and intentionally

participated in a conspiracy and was not merely an unwitting or uninvolved bystander.") (quotation omitted). In *Mejia-Uribe*, a 1978 conviction for an isolated cocaine sale "pale[d] in comparison with the other evidence produced by the government to show knowledge and intent" of the ongoing drug conspiracy. The conviction was more prejudicial than probative, showing little more than the defendant's "propensity to commit this type of crime." *Mejia-Uribe*, 75 F.3d at 399.

As in *Mejia-Uribe*, the Government here presented significant evidence linking Henderson to the ongoing drug conspiracy that began in 2007. Two co-conspirators and nine investigators testified about his involvement with the conspiracy. "[T]he jury received . . . highly probative evidence of [his] knowledge and intent." *Id.* Introduction of the 1993 conviction for a single sale of cocaine was thus more prejudicial than probative.

This court "will not reverse a conviction if an error was harmless." *United States v. Donnell*, 596 F.3d 913, 919 (8th Cir. 2010). "The test for harmless error is whether the erroneous evidentiary ruling had a substantial influence on the jury's verdict." *Id.* (quotation omitted). *See United States v. LeCompte*, 99 F.3d 274, 279 (8th Cir. 1996) ("The evidence supporting conviction was by no means overwhelming, so the admission of highly prejudicial Rule 404(b) evidence cannot be dismissed as harmless error."); *Mejia-Uribe*, 75 F.3d at 399 ("The government's case against Uribe was overwhelming . . . [and] [t]herefore introduction of the 1978 conviction did not have substantial and injurious effect or influence in determining the jury's verdict.") (quotation omitted). Evidence against Henderson was considerable. His 1993 conviction was merely "cumulative of other evidence establishing [his] knowledge and intent to participate in the conspiracy." *Id.* Introduction of the conviction was harmless error.

He also alleges that the district court abused its discretion by not instructing the jury to disregard the mention of his 1989 conviction for cocaine possession. The court immediately corrected the instruction: "Oops. Let me say this, it was only one conviction, and that conviction was for the sale of cocaine, not the other [one for

possession]. So I'll start again, and so keep that in mind." Such a limiting correction or instruction "mitigates concerns of prejudice." *United States v. Ragland*, 555 F.3d 706, 715 (8th Cir. 2009); *see United States v. Hester*, 140 F.3d 753, 758 (8th Cir. 1998) (district court's immediate "curative instruction, admitting that it misspoke" corrected the error). The district court did not abuse its discretion.

Henderson further objects to the district court's refusal to offer a limiting instruction after testimony about his failure to file taxes in 2004 and 2005. When the Government began questioning a witness about Henderson's tax filings, the district court sua sponte restricted counsel to a single question about filings directly related to the drug conspiracy. The court did not commit reversible error by failing to instruct the jury to disregard the testimony. *See United States v. Davis*, 103 F.3d 660, 672 (8th Cir. 1996) (any "prejudicial effect" of evidence that defendant did not file taxes "did not outweigh its probative value").

C.

Henderson claims that the district court plainly erred by limiting defense counsel's questioning at trial. Because he raised no objection then, this court reviews for plain error. *United States v. Harper*, 466 F.3d 634, 644 (8th Cir. 2006). "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." *United States v. Bain*, 586 F.3d 634, 640 (8th Cir. 2009). "A plain error will not be corrected unless (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*, *citing United States v. Olano*, 507 U.S. 725, 732 (1993).

A judge must maintain order during trial but remain "especially cautious, because a judge's influence on a jury is great and any word may prove controlling." *United States v. Youngman*, 481 F.3d 1015, 1018 (8th Cir. 2007) (internal quotations omitted); *see Skogen v. Dow Chemical Co.*, 375 F.2d 692, 703 (8th Cir. 1967) ("[A] trial judge . . . is more than a mere moderator or arbiter [and] has the obligation . . . to preside and conduct a fair and impartial trial, to rule out improper questions, and

protect witnesses."); *see also* **Fed. R. Evid. 611(a)** ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence."). Henderson must show that "there is a reasonable probability that the outcome of his trial would have been different had the court not made the [limiting] statements." ***Harper***, 466 F.3d at 646. In reviewing for prejudicial effect, this court reviews "the trial as a whole." ***Youngman***, 481 F.3d at 1018.

The district court's actions did not prejudice Henderson. Once, the judge told defense counsel to ask a question "in about ten words." Sua sponte, the judge objected to a question on cross-examination. During trial, the judge warned counsel about asking too many questions. But most comments were out of the jury's hearing and to both parties. The judge also, sua sponte, instructed the Government to limit questioning on tax filings. Twice, the judge told Government counsel to "[a]sk a short question" and "[s]top talking." This is not a case where "[o]utrageous comments . . . destroy[ed] the integrity of the entire proceeding." ***Rush v. Smith***, 56 F.3d 918, 922 (8th Cir. 1995) (en banc) ("The trial judge committed plain error by telling the jury that the races have a tendency to stick together."). The judge did not overstep the bounds of appropriate judicial oversight.

D.

He objects to his sentence enhancement under 21 U.S.C § 841 based on two prior felony convictions because the district court failed to follow 21 U.S.C. § 851(b) procedure. This court reviews failure to engage in the colloquy required by § 851(b) for harmless error. ***United States v. Rounsavall***, 115 F.3d 561, 566 (8th Cir. 1997). An error is harmless if it does not affect the defendant's substantial rights. *See* ***United States v. Espinosa***, 585 F.3d 418, 430 (8th Cir. 2009). A "plain error that affects substantial rights may be considered even though it was not brought to the court's attention." **Fed. R. Crim. P. 52(b)**.

Henderson learned that the 1989 and 1993 convictions would support enhancement when the Government filed an information before trial. The

Government asserts that he failed to object to the information. *See* **21 U.S.C. § 851(c)** ("If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information."); *United States v. Razo-Guerra*, 534 F.3d 970, 975 (8th Cir. 2008). But the district court erred by not asking him to affirm or deny the convictions. **21 U.S.C. § 851(b)** ("If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted."). Accordingly, he contends that the Government failed to meet its burden of proving the convictions. *See United States v. Kellam*, 568 F.3d 125, 141 (4th Cir. 2009) (listing facts the government must prove).

The district court's error was, however, harmless. "Although § 851[(c)] allows a defendant to attack a prior conviction . . . [§ 851(e)] precludes challenges to convictions 'which occurred more than five years before the date of the information alleging such prior conviction.'" *Rounsavall*, 115 F.3d at 566, *quoting* **21 U.S.C. § 851(e)**; *United States v. Samuels*, 543 F.3d 1013, 1020 (8th Cir. 2008); *see also Custis v. United States*, 511 U.S. 485, 487 (1994) (holding that due to statute, defendant cannot collaterally attack prior convictions used to enhance sentence unless in violation of the right to counsel). Henderson's convictions occurred 20 and 16 years before the date of the information, nullifying any § 851 (c) challenge. The district court's § 851(b) error did not, therefore, affect his substantial rights.

According to Henderson, this court should still reverse because the 1989 felony resulted in a suspended imposition of sentence, which is not a conviction under Missouri law. *See State v. Lynch*, 679 S.W.2d 858, 860 (Mo. 1984). "We have previously held that the question of what constitutes a 'prior conviction' for purposes of § 841(b)(1)(A) is a matter of federal, not state, law, and . . . a suspended imposition of sentence qualifies as such a prior conviction." *United States v. Craddock*, 593 F.3d 699, 701 (8th Cir. 2010) (prior Missouri suspended-imposition-of-sentence),

-10-

*distinguishing* **United States v. Stallings**, 301 F.3d 919 (8th Cir. 2002); **United States v. Slicer**, 361 F.3d 1085, 1087 (8th Cir. 2004) (same); **United States v. Franklin**, 250 F.3d 653, 665 (8th Cir. 2001) (same); **United States v. Ortega**, 150 F.3d 937, 948 (8th Cir. 1998) (same). The district court's error was harmless.

E.

Henderson contends that the district court erred in excluding testimony from his former counsel at a pretrial hearing. He claims to have relied on this ruling in not calling his former counsel to testify, fundamentally altering his trial strategy. This court reviews "evidentiary rulings for abuse of discretion." **United States v. Keiser**, 578 F.3d 897, 904 (8th Cir. 2009). "The district court has wide discretion in excluding evidence." **United States v. Haskell**, 468 F.3d 1064, 1072 (8th Cir. 2006). To merit reversal, the error must have "a substantial influence on the jury's verdict." **United States v. Smith**, 591 F.2d 974, 979 (8th Cir. 2010); *see* **Fed. R. Evid. 103(a)** ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

The testimony would have included DEA agents' alleged promises to Henderson on March 10 that induced his cooperation and, specifically, an agent's statement during the March 11 meeting: "Could your client live with a year or so?" The Government counters that this statement and much of the accompanying testimony are inadmissible hearsay. Irrespective of that, exclusion of the testimony did not substantially affect the jury's verdict.

On March 10, Henderson consented to a search and made statements about drug dealing. The following day, he voluntarily met with DEA agents. As the magistrate judge[2] noted, nothing in the record supported Henderson's contention that promises caused him to waive his rights. The only evidence of discussion about a possible

---

[2]The Honorable Audrey G. Fleissig, United States Magistrate Judge for the Eastern District of Missouri.

sentence occurred on March 11, the day after he agreed to cooperate. The counsel's testimony would not have led a reasonable jury to a different verdict given the significant evidence against Henderson at trial. *See **Haskell***, 468 F.3d at 1073 (no reversible error in excluding evidence where "the jury was [already] informed of the nature of defendant's cooperation with the government"). The district court's denial of this testimony does not require reversal.

## III.

The judgment of the district court is affirmed.

_____